# Superior Court Reports.

## IN GENERAL TERM, 1872.

---

HORACE F. KENYON ET AL *v.* THE CITY OF INDIANAPOLIS,
Appellant.

Appeal from RAND, Judge.

MUNICIPAL CORPORATION—*when liable for injuries caused by*
*defects in highway—*
HIGHWAY—*defects in.*

All persons in using the streets and sidewalks have the right to assume that
they are in a good, and safe condition, and to regulate their conduct
upon that assumption.

If a city permits the construction of a vault under a sidewalk, she must use
due care, and diligence to see that the vault is properly constructed,
and the opening thereto securely and safely covered, and if constructed
in a sidewalk, over which the city has exclusive control, the Court will
infer, in the absence of any allegations to the contrary, that it was
constructed under a license from the city authorities.

Proof of the mere existence of a latent defect in a sidewalk, in a city, is
not enough to charge the corporation with negligence; the corporation
must in some way be in fault in connection with the defect, and if the
defect does not originate in the construction, express notice of the defect,
or negligence of duty in not ascertaining and remedying it, must be
shown, else the city will not be liable to repair. Hence it is not enough,
to entitle the plaintiff to recover, to prove that the covering was inse-
curely fastened at the time of the accident, and that by reason thereof,
and without fault on her part, she was injured.

A liability only attaches to a municipal corporation where there has been a
failure to remedy such defects as may be detected, and removed by the

exercise of ordinary care, and diligence. Mere knowledge on the part
of a few private citizens of a latent defect in a sidewalk, is not sufficient
to charge the city with notice.

Although some of the special findings may be inconsistent with each other,
the verdict will not be disturbed, if taken as a whole, they are not
inconsistent with the general verdict.

*J. S. Harvey,* for appellant.

*Barbour & Jacobs,* for appellee.

BLAIR, J.—The complaint in this case, after alleging that
it is the duty of the city of Indianapolis to keep the streets
and sidewalks in good, safe repair, charges that a certain
opening in the sidewalk on West New York street, in said
city, in front of the property owned by the defendant, Mary
Edgar, was constructed without using due care to make the
same safe, and was insecurely covered, and the cover " having
been insecurely fastened, and the support beneath the same
having worn away, and fallen out." As the plaintiff, Emma
M. Kenyon, the wife of Horace F. Kenyon, was passing
along the sidewalk, and having no knowledge of the unsafe
condition of the cover, she stepped on the same when it gave
way, and turned beneath her, causing her to fall through the
opening into the vault beneath, whereby she was injured, etc.

A demurrer to the complaint on the part of the city was
overruled. We think the complaint was sufficient.

An answer was filed by Mary Edgar, and the plaintiffs
then dismissed the cause as to her.

The city then filed her answer, in three paragraphs, as fol-
lows:

*First.* A general denial.

*Second.* That the opening mentioned in the complaint
was constructed by Mary Edgar, or by the persons under
whom she holds title to the premises described in the com-
plaint, for their sole use and benefit; that it was not
constructed by the city in the improvement of the sidewalk,

or otherwise, for the use of the city, and that the defendant, her officers, or agents, never at any time had notice that the vault, and covering were defectively constructed, or were out of repair.

*Third.* That neither the defendant, nor any of her officers, or agents, had any notice, or knowledge of the defective construction of the vault, and covering, by Mrs. Edgar, constructed for her own use, etc.

Demurrers were sustained to the second and third paragraphs of answer.

The second paragraph of answer proceeds upon the assumption, and we think correctly, that the complaint, although containing but one paragraph, seeks a recovery on two grounds; *first,* that the injury complained of resulted from a defect in the original construction of the vault, and covering; *second,* from the same being suffered to be, and remain out of repair.

The answer attempts to meet the first charge by saying that the vault was made by Mary Edgar, or those under whom she holds title to the property, for their sole use, and benefit, and not for the use of the city, or by the city, in the improvement of the sidewalk, and that the city had no notice that there was any defect in the construction.

If the vault, and covering was constructed in the sidewalk, over which the defendant had exclusive control, we may, in the absence of any allegation that objections were made, infer that it was done under an implied license from the city authorities. *Robbins* v. *Chicago City,* 4 Wal. 657.

The question raised by the demurrer may therefore be stated as follows: If the city permits the owner of property abutting a public street to construct a vault under the sidewalk, with an opening in the walk, for the sole use of the owner of the property, is the city bound to see that it is constructed with due care for the safety of the public having a right to pass, and repass over the walk ?

This is a question of great importance, both to the city, and the public.

It is urged on behalf of the defendant, that the case of *Stackhouse* v. *The City of Lafayette*, 26 Ind., 17, settles the rule that the city is not bound in such cases to look after the the construction of the vault, and exercise reasonable care in seeing that it is made safe for persons passing over the sidewalks, and that the person making the vault is alone liable for an injury resulting from a defect in the construction of the same.

In that case the city of Lafayette had granted the right of way along a certain street to a railway company. The company, in constructing her road, found it necessary, in crossing a small stream of water, to make a bridge, or culvert, as a part of the track, or road bed, and the complaint was, that the culvert was "insufficient in capacity to carry off the water in its natural course and flow in said stream, and obstructs the same," and causes the water to flow back, and submerge the lot of the plaintiff, injuring his dwelling house, stable, etc.

The Court held that the city was not liable. In considering the case, the Court cited, and commented upon a number of authorities, showing a distinction between ministerial and other forms of a municipal corporation, and the duty of exercising care in the construction of improvements made by cities, and of keeping the same in repair; and a portion of the language used by the learned judge would seem to sustain the position that a city is not liable for an injury resulting from a defect in the construction of a culvert, or vault made by another corporation, as individuals, for their sole use and benefit. The injury, however, complained of in that case did not result from a defect in the surface of the street, or sidewalk, but on the contrary, the culvert was, for all that appears, constructed with due regard for the safety of all persons passing the street, and the injury was to property situated on an adjoining lot, caused by an overflow

of water, and was entirely disconnected from the use of the street as a public thoroughfare.

The attention of the Court does not seem to have been called to a large class of well considered cases, similar to the one at bar, and while we regard the decision as correct upon the points involved in the case, we believe there may be a well grounded distinction drawn between the questions, and facts there involved, and those in the case we are considering. The streets and sidewalks in a city are for the use of the public to walk, or drive upon at all hours, whether day or night, and all persons using them have a right to regulate their conduct upon the assumption that they are in a safe condition. *Davenport* v. *Ruckman and the Mayor, etc., of the City of New York,* 37 N. Y., 568.

Persons passing upon sidewalks ought not to be in constant dread of stepping into unseen vaults, and pitfalls, to the great danger of life and limb. The authorities of a city, being clothed with plenary power over streets and sidewalks, can compel persons who construct vaults for their own use to make and keep them secure, and if they are permitted to be constructed, a reasonable regard for the safety of the public would require them to exercise their power, and see that they are made safe. Where great danger may result from the failure to exercise a power given for the benefit and protection of the public, as in this case, to secure safe streets and sidewalks, greater care and diligence in the use of the power will be required; and in such case the exercise of the power becomes a duty. *The City of Logansport* v. *Wright,* 25 Ind., 513; *The City of New York* v. *Furze,* 3 Hill, 612.

An injury resulting to a person passing upon a street, or sidewalk can be readily traced to its legitimate cause, if it results from a defect in the surface, and differs from a consequential injury to property not on, or connected with the street, as in the Stackhouse case. The distinction we have attempted seems to have been in the mind of the Court when

considering that case, as clearly indicated by the following language used in the opinion:  " The complaint is not that the free use of the street was in any way obstructed, nor that the injury occurred in passing over, or otherwise using the street.   Indeed, it is difficult to see that the existence of the street had any relation to the injury, as, in its absence, the culvert in the same place, if not of sufficient size to give free vent to the water flowing in the stream, would have produced the same injury."

This language conveys the impression that if the injury had resulted from a defect in the surface of the street, dangerous to persons passing over it, the ruling might have been otherwise; and the case can not therefore be regarded as settling the rule as claimed by the counsel for the defendant. This conclusion is confirmed by the many authorities, which hold that if a city permits an opening to be made in a sidewalk, she must see that it is so constructed as to secure the public from danger.

The English cases cited in *Stackhouse* v. *The City of Lafayette*, were all cases where the local authorities were indicted for not keeping in repair; and under the statute of 22d Henry VIII, which Lord Coke says, " was in affirmance of the common law," it was held that the indictments could not be sustained if it was proved that some other persons, lands, or body politic was bound to make such repairs.   So, also, was the case there recited, of *The State* v. *The Inhabitants of Graham*, 37 Maine, 451.

The case of *Chicago City* v. *Robbins*, in the Supreme Court of the United States, 2 Black., 418, was an action on the case by the city of Chicago against Robbins, the complaint alleging that Robbins was the owner of a lot on a public street, and wrongfully made an excavation in the sidewalk adjoining, and suffered the same to remain unguarded; and that one Woodbury fell into it, and was injured, and for which injury he had recovered a judgment

against the city of Chicago, which she paid, and for which she now sued to recover of Robbins the amount paid Woodbury. The Court in deciding the case used the following language: "It is well settled that a municipal corporation having the exclusive care, and control of streets, is obliged to see that they are kept safe for the passage of persons and property, and to abate all nuisances that might prove dangerous; and if this plain duty is neglected, and any one is injured, it is liable for the damages sustained. The corporation has, however, a remedy over against the party that is in fault, and has so used the streets as to produce the injury, unless it was also a wrong-doer." The case had been tried by a jury, and a verdict rendered for the defendant Robbins. The judgment was reversed by the Supreme Court, and on another trial the city recovered against Robbins, and he again brought the case before the Court, on appeal, where the questions were again considered, and the former ruling adhered to. In this case the defect was apparent to the passer by, and the Court says the excavation made by Robbins was a "private work, exclusively for his own convenience." *Robbins* v. *Chicago City*, 4 Wal., 657.

The case of *Davenport* v. *Ruckman and the Mayor, etc., of the City of New York*, before cited, was an act for injuries sustained by the plaintiff falling into an excavation extending from the front wall of a building six feet on the sidewalk, with steps leading to a cellar way in the wall of the building, which Ruckman was to put in repair. The excavation was not covered, or railed in, and had been in that condition for some time. The defect was apparent to the observation of any one, and it was held that the corporation having neglected to keep the walks in a safe condition, she was liable to the plaintiff, as was also the defendant Ruckman, and there was no objection to their being joined in one suit.

*Huston and wife,* v. *the Mayor, etc., of New York,* is a similar case, in which the defendant was also held liable.

The case of *Wendell* v. *the Mayor, etc., of Troy,* 39 Barb., 329, is also directly in point, and in which it is held that if such work is for any reason tolerated by the public authorities, it is their duty to exercise a supervision over its construction, and condition, and it is negligence, and a breach of duty to omit such supervision.

The case of *Burnham* v. *The City of Boston,* 10 Allen, 290, was to recover for an injury sustained by driving a carriage into an excavation in the street, made by a railroad company for its track. The excavation was protected by a fence from the side approached by the street, but was unprotected on the side next to a vacant lot, across which the plaintiff drove in the night, and fell into the excavation. It was held that in the exercise of due and proper care the city should have provided a barrier, and having neglected so to do, should be liable.

The case of *Bacon* v. *The City of Boston,* 3 Cushing, 174, is to the same effect. The injury resulted from stepping into a cellar window constructed by the owner of the building, and which projected but a short distance into the walk. It was urged that the city was not liable, but the Court held otherwise, and that the liability was not discharged because the owner of the building was permitted to use part of the walk for a private purpose. The following cases assert the same rule: *Willard* v. *Newberry,* 22 Vt., 458; *Batty* v. *Dixbury,* 24 Vt., 155. See also *Shearman and Redfield on Negligence,* Sections 360, 400 and 407, and authorities there cited.

In view of these authorities, which are believed to be founded in good reasons, and calculated to protect the rights of the public, it was the duty of the city to use due, and proper care to see that the vault and covering was safely constructed; and she can not be released from this duty by saying, as in the second and third paragraphs of her answer, that she never had notice that the vault, and covering were

defectively constructed. It was her duty to supervise the construction, and use due diligence, and care to see that it was made safe. The ruling of the Court in sustaining the demurrer to these paragraphs was therefore right.

The cause was tried by a jury, and a verdict rendered for the plaintiff.

Exceptions were taken by the defendant to instructions numbered *two, three,* and *four,* given by the Court to the jury, at the request of the plaintiffs. These instructions were as follows:

" *Second.* The defendant, the city of Indianapolis, is by law vested with the exclusive control of the streets and sidewalks within the city limits, and is bound to keep the same in a safe, and passable condition for foot passengers, and if it fails to do so, and a person using ordinary care to avoid injury is injured, the city is liable in damages.

" *Third.* The city has not performed her whole duty when she has required vaults, or openings in the sidewalks to be constructed safely in the first place, but she is bound to maintain, and keep them in a safe condition at all times.

" *Fourth.* The jury may presume that the city has notice of any defect in a sidewalk when the same has been left in an unsafe, or dangerous condition for a considerable time without being repaired."

Negligence on the part of the city is the gist of the action, and must be affirmatively shown to entitle the plaintiff to recover. The mere existence of a latent defect is not enough to charge the corporation with negligence. The corporation must in some way be at fault in connection with the defect. On the presumption that the city permitted the construction of the vault, we have already stated the rule to be that it was her duty to supervise its construction, and to use due care to see that it was made safe in the first instance. If there was any evidence in the cause tending to show a defect in the original construction of the vault, so far as the instruc-

tion relates to this subject, the defendant can not complain. The second and third, however, embody a further principle, and state, in unqualified terms, that the city is bound at all times to keep them in a safe condition.

If a defect is so apparent, and notorious as to be evident to all who have any occasion to pass the place, or observe the premises, the corporation, although she may not have had express notice, is chargeable with constructive notice of the defect being in fault from not knowing the fact. If the defect is latent, and can not be observed by the exercise of reasonable care by the authorities of the city, or by those who pass the premises, express notice must be shown, else the city will not be liable for neglect to repair. The general rule may be stated to be, " that a municipal corporation charged with the duty of keeping its streets in repair, and of exercising a general oversight in regard to their condition, and safety, is bound to maintain them free from all defects, or obstructions which ordinary vigilance and care can detect, and remove." *Wendell* v. *Troy,* 39 Barb., 329.

*Hart* v. *The City of Brooklyn,* 36 Barb., 226, is a case where the facts were almost identical, in every particular, with the case at bar, and where the law is held as above stated. The same principles are also supported in *Mc Gaity* v. *the Mayor, etc., of New York,* 5 Duer, 674; *Garrison* v. *the same,* 5 Bosw., 497; *Mower* v. *the Inhabitants of Leicester,* 9 Mass., 247; *Vandylke* v. *The City of Cincinnati,* 1 Disney, 532; *Dewey* v. *The City of Detroit,* 15 Mich., 307; *Howe* v. *Plainfield,* 41 N. H., 135; *Shearman and Redfield on Negligence,* sections 148, 149. 147, and authorities there cited.

The plaintiff, Mrs. Kenyon, testified that she lived near by the place where the injury occurred; that she was walking along there as she had walked hundreds of times before, and says: " The covering was on, and in its proper place. I stepped on one side of the covering, when it turned, and I fell through. * * Did not make any investigation of the defect."

Kenyon *et al v.* The City of Indianapolis.

Mr. Sulgrove, who was along at the time, is the only witnest for the plaintiff who testified about the defect, and he says "the cover, or grating over the vault rested on pins around. I presume some of the pins were out. * * * Supposed the pins were out from the way it turned. The covering pivoted near the center."

Mr. McKernan, a witness for the defense, testified that he built the house, and constructed the vault for the use of the house, to get coal, or wood into the cellar. The vault was put in about fifteen years ago. "It was constructed, and had a covering similar to others that were got up by D. Root & Co., and were common in the city." Thinks it was securely built.

Mr. Brigham, another witness for the defendant, and who lived in the house with which the vault connected, says he examined it the morning after the accident, and found that one pin had worked out; found the pin in the vault below; the grate would tip up. This was all the evidence relating to the original construction of the vault, and the defect that existed at the time of the accident.

Mr. Sulgrove says it had been out of repair almost a year before.

Mrs. Sulgrove says: "I knew the grate was not secure. My sister had fallen into it. I had known of its being out of repair for nearly a year."

Dr. Corliss says the grating had been out of repair some months before the accident.

Mr. Brigham says he never knew it out of order until the time of the accident.

Mr. Douglass has lived within one hundred feet of the place for a long time, and passed the vault several times every day, and night, and never noticed it out of repair. Never examined it.

This was all the evidence tending to show knowledge on the part of any one that it was out of repair, and no one of

these witnesses stated the defect that existed at the time they observed it; and we can not tell whether the defect of which they had knowledge was the same that caused the injury, or not. We fail to see in the testimony any evidence showing that there was a defect in the original construction. If there is a more skillful, and safer mode of constructing vaults than that of letting the cover rest on iron pins, it would be a question of fact to be shown in evidence. In the absence of any evidence whatever on this subject, the fact that it had stood for some fifteen years, and was not shown to have been out of repair until within a few months, or a year of the accident, tends strongly to show that there was no inherent defect in the original construction.

One of the pins upon which the cover, or grate rested had fallen out, and this seems, from the evidence, to have been the cause of the accident. These pins are underneath the cover, and could not be seen by the passer by, nor by any one, unless the cover was removed, or they entered the vault beneath. The defect which caused the injury was, therefore, not apparent, and there was nothing in the evidence to put the city in the wrong, by charging her with constructive notice of the defect, so as to hold her liable for neglect to repair the same. Mere knowledge on the part of some three private citizens that the vault had been out of repair for about a year would not, in such case, be sufficient to charge the city with notice.

If the views we have taken of the law are correct, a city is not absolutely liable at all times for all defects which may render a street, or sidewalk unsafe for the foot passengers. The highest degree of care, and vigilance might fail in keeping them at all times, and places in such condition, and as before stated, a liability only attaches when there has been a failure to remedy such defects as may be detected, and removed by the exercise of ordinary care, and vigilance. As applied to the evidence in the case, we are, therefore, of

opinion that the second, and third instructions did not state the law correctly, and although the seventh and eighth instructions given by the Court contained a correct statement, the jury may have been at a loss which to follow, and may therefore have been misled. *Somers et al* v. *Pumphrey et al*, 24 Ind., 231.

The fourth instruction was inapplicable, where the evidence shows that the defect causing the injury was latent, and there was no evidence tending to show express notice to the city.

The giving of these instructions was therefore error, and the motion for a new trial should have been sustained.

The defendant asked some three instructions, which were refused. The first embodies the principle, that if the vault was defectively constructed, the city was not liable unless she had notice of the defect. For the reasons given in considering the demurrer to the answers, this instruction was improper, and was properly refused. The second and third instructions asked stated the law correctly, but as the same principles were embodied in charges given by the Court, there was no error in refusing them.

The next error complained of is the overruling of the motion of the defendant for judgment on the special findings, notwithstanding the general verdict. There was no error in this. Some of the findings are inconsistent with each other, but taken as a whole, we can not say they are inconsistent with the general verdict.

There was no error in striking out the third interrogatory proposed by the defendant, and if there was, the question is not presented by a proper bill of exceptions.

The motion in arrest of judgment has already been disposed of by holding that the complaint was good.

The judgment is reversed. Cause remanded to Special Term for further proceedings, in accordance with this opinion.

NOTE.—He who disturbs the surface of the highway, and makes openings in it, is an insurer of all persons who pass over the opening, however carefully protected    5 *Duer*, 495; 18 *N. Y. R.*, 79, 85.

He is responsible for all injuries resulting from its want of entire safety, for all the purposes for which the public have a right to use such sidewalk. *Same.*

. Nor is he protected by showing that the covering had answered the purpose for which it was intended for a year after the completion of the work, and that he had no knowledge that the covering was insufficient.    *Same.*

The question of negligence does not arise.    *Same.*

A municipal corporation, possessing the legal power, and furnished with the means to construct, and keep in repair highways, and streets within their jurisdiction, are liable to every one who may be injured by their neglect to repair defects therein after notice    10 *Boswirth*, 20, *and cases cited therein;* 2 *Black.*, 590.    *See also* 1 *Black.*, 39, 51, 52, 54; 5 *N. Y.*, 369; 17 *do.*, 104; 37 *do.*, 568.

In an action against a city municipal corporation for damages, sustained by reason of a grate over an opening in a sidewalk being in a defective or unsafe condition, it is not enough to entitle the plaintiff to recover to prove that the covering was insecurely fastened at the time of the accident, and that by reason thereof, and without fault on his part, he was injured. Notice to the defendant of the defect, or negligence of duty, in not ascertaining and remedying it must be shown.    5 *Duer*, 674.    *See also* 3 *Hill*, 612; 2 *Barn. & Ald.*, 179;    *Wilson* v. *the Mayor*, etc., 1 *Denio*, 595.

Where the streets and avenues of a city are negligently suffered to become and remain out of repair, the corporation is liable for injuries sustained by persons through such negligence.    9 *N. Y.*, 162, *and cases therein cited.*

Negligence must be affirmatively shown, and the mere existence in a highway of an obstruction, or other defect, is not enough to establish negligence in the corporation—*Shearman & Redfield, on Negligence*, 81, 147.    If the corporation has a knowledge of a defect, and permits it to remain, it is then liable for the consequences of their negligence.    48 *Penn.*, 320; 36 *Barb.*, 226.    *See also* 39 *Barb.*, 329.

If the defect in a *lawful* structure is *latent*, either express notice of it must be brought home to the corporation, or the defect must be so notorious as to be evident to all who have any occasion to pass the place, and observe the premises—*Shearman & Redfield, on Negligence, Sec.* 148, *and authorities cited*—in which case the corporation is charged with constructive notice, being in fault for not knowing the fact.    *See also* 37 *N. Y.*, 568.

" A municipal corporation, which has been compelled to pay damages to .one injured by falling into an unguarded area made by the defendant, has a remedy against the latter for re-payment"—23 *Pick.*, 24; 4 *Cush.*, 275; 9 *Allen*, 17.    If, however, the damages resulted from an act.for which they

were liable in law, they can have no recourse over against the actual wrong doer. 35 *Penn. St.*, 284.

Where a duty, or obligation is once fixed upon a party, a corresponding liability is involved to pay damages resulting from a neglect of such duty. 13 *Iowa*, 181.

" It is not enough to show that the defendent has been guilty of negligence, without showing in what respect he was negligent, and how he became bound to use care to prevent injury to others." *Law Rep.*, 2 *Com. Pleas Cases*, 371, 374. "Negligence alone will not do, unless some breach of duty is shown." *Law Rep.*, 3 *C. P.*, 495, 498. *See also* 10 *Meeson & Welsby's Rep.*, 109 ; 19 *Common Bench Rep.*, (N. S.), 213.

If " without fault on the part of the owner, the cover, fence, or guard is removed or placed in a dangerous position, the owner is not liable until he has had actual, or constructive notice of the fact, and has had reasonable opportunity to put it right." *Shearman & Redf., on Neg., Sec.* 360; 3 *Carrington & Payne's Rep.*, 362.

In an action against the owner of a coal vault for injuries received by a person falling through an insecure grating leading to such vault, the Court charged—

" *First,* That the law imposed upon the owner of property in a city, who used any part of the street for his private purpose, the duty of employing all necessary, and proper means for the prevention of damages and injury that might arise from the use of such public street by him, and he is responsible for all injury resulting from the street being made thereby less safe for its proper uses, when there is no negligence on the part of the party injured.

" *Second,* If the grating was insecure at the time of the happening of the accident, and that was occasioned by the negligence of the defendant, he is liable; for being the owner of the property, he was bound to see that the grating was kept securely.

      *      *      *      *      *      *      *

" *Fourth,* If the defendant did not resort to all necessary, and proper means to render the grating secure, and its insecurity had existed and continued for a considerable time previous to the action, he is liable.

      *      *      *      *      *      *      *

" *Sixth,* The defendant would not be liable, if the grating had been secured by him previously, and the security had been removed by the tenant, or any one else."

This charge was sustained. *See* 26 *How. Pr.*, 105.

"Though the corporation may impose upon the owners of lots fronting upon the streets, or avenues the burden of paving and keeping the sidewalks in repair, they do not thereby relieve themselves of the duty imposed upon them by charter, and by statute, of altering, amending, and keeping in repair the streets and highways within the city." *Wallace* v. *Mayor, etc., of N. Y.*, 2 *Hill*, 440. *See also* 3 · *Cush.*, 174.

Kenyon *et al v*. The City of Indianapolis.

In *Hall* v. *Manchester*, 40 *N. H.*, 410, it was held that the city was properly liable for an injury sustained from a defect in a sidewalk, provided the defect was one of which the city could reasonably have had knowledge, and the plaintiff, on her part, was in the exercise of due prudence and care.

In *Raymond* v. *Lowell*, 6 *Cush.*, 524, it was held that the projection of the movable grating of a culvert from one to two inches above the level of the edge of the sidewalk, against which it rested, was not a defect showing such a want of ordinary care on the part of the city, as would make it responsible for an injury occasioned by stumbling over the grating.

The principles of this last decision are extended in the case of *Hixon* v. *Lowell*, 13 *Gray*, 59, in which the Court held, that "in most cases the town has discharged its duty when it has made the surface of the ground over which the traveler passes, sufficiently smooth, level, and guarded by railings, to enable him to travel with safety, and convenience by the exercise of ordinary care on his part. There may be many causes of injury, to which he might be exposed in traveling upon such a way, which would not constitute any defect, or want of repair in the way itself The town, if it has done its duty in making the way safe, and convenient in all the proper attributes of a way, is not obliged to insure the safety of those who use it."

In all cases, " before a municipal corporation can be made liable for injury caused by a defect in a highway, not arising from its construction, or by an obstruction placed therein by a wrong doer, *either express notice of the existence of the nuisance must be brought home to it, or the defect must be so notorious as to be observable by all*, in which case the corporation is charged with constructive notice, being in fault for not knowing the fact." *Shear. & Redf. on Neg.*, Sec. 407. *See also* 4 *Wallace*, 189; 9 *N. Y.*, 456; 1 *Disney*, 532; 15 *Mich.*, 307; 33 *Ala.*, (N. S.), 116: 41 *N. H.*, 135; *Verm.*, 438; 1 *Mass.*, 153; 20 *Conn.*, 118; 6 *Am. Law Reg. tit. " Highway," and " Municipal Corporation." See Dillon on Municipal Corporations.*—[REPORTER.