87 U.S. 445 (____)
20 Wall. 445
INSURANCE COMPANY
v.
MORSE.
Supreme Court of United States.

*447 Mr. J.W. Cary, in support of the judgment below.
Messrs. W.M. Evarts and H.M. Finch, contra.
*450 Mr. Justice IIUNT delivered the opinion of the court.
The refusal of the State court of Wisconsin to allow the removal of the case into the United States Circuit Court of Wisconsin, and its justification under the agreement of the company and the statute of Wisconsin form the subject of consideration in the present suit.
The State courts of Wisconsin held that this statute and their agreement under it justified a denial of the petition to remove the case into the United States court. The insurance company deny this proposition, and this is the point presented for consideration.
Is the agreement thus made by the insurance company one that, without reference to the statute, would bind the party making it?
Should a citizen of the State of New York enter into an agreement with the State of Wisconsin, that in no event would he resort to the courts of that State or to the Federal tribunal within it to protect his rights of property, it could not be successfully contended that such an agreement would be valid.
Should a citizen of New York enter into an agreement with the State of Wisconsin, upon whatever consideration, that he would in no case, when called into the courts of that State or the Federal tribunals within it, demand a jury to determine any rights of property that might be called in question, but that such rights should in all such cases be submitted to arbitration or to the decision of a single judge, the authorities are clear that he would not thereby be debarred from resorting to the ordinary legal tribunals of the State. There is no sound principle upon which such agreements can be specifically enforced.
*451 We see no difference in principle between the cases supposed and the case before us. Every citizen is entitled to resort to all the courts of the country, and to invoke the protection which all the laws or all those courts may afford him. A man may not barter away his life or his freedom, or his substantial rights. In a criminal case, he cannot, as was held in Cancemi's Case,[*] be tried in any other manner than by a jury of twelve men, although he consent in open court to be tried by a jury of eleven men. In a civil case he may submit his particular suit by his own consent to an arbitration, or to the decision of a single judge. So he may omit to exercise his right to remove his suit to a Federal tribunal, as often as he thinks fit, in each recurring case. In these aspects any citizen may no doubt waive the rights to which he may be entitled. He cannot, however, bind himself in advance by an agreement, which may be specifically enforced, thus to forfeit his rights at all times and on all occasions, whenever the case may be presented.
That the agreement of the insurance company is invalid upon the principles mentioned, numerous cases may be cited to prove.[] They show that agreements in advance to oust the courts of the jurisdiction conferred by law are illegal and void.
In Scott v. Avery (one of the cases), the Lord Chancellor says: "There is no doubt of the general principle that parties cannot by contract oust the ordinary courts of their jurisdiction. That has been decided in many cases. Perhaps the first case I need refer to was a case decided about a century ago.[] That case was an action on a policy of insurance in which there was a clause that in case of any loss or dispute it should be referred to arbitration. It was decided there that an action would lie, although there had *452 been no reference to arbitration. Then, after the lapse of half a century, occurred a case before Lord Kenyon, and from the language that fell from that learned judge, many other cases had probably been decided which are not reported. But in the time of Lord Kenyon occurred the case which is considered the leading case on the subject, of Thompson v. Charnock.[*] That was an action upon a charter-party, in which it was stipulated that if any difference should arise it should be referred to arbitration. That clause was pleaded in bar to the action brought upon breach of the contract, with an averment that the defendant was, and always had been, ready to refer the same to arbitration. This was held to be a bad plea, upon the ground that a right of action had accrued, and that the fact that the parties had agreed that the matter should be settled by arbitration did not oust the jurisdiction of the courts." Upon this doctrine all the judges who delivered opinions in the House of Lords were agreed.
And the principle, Mr. Justice Story, in his Commentaries on Equity Jurisprudence,[] says is applicable in courts of equity as well as in courts of law. "And where the stipulation, though not against the policy of the law, yet is an effort to divest the ordinary jurisdiction of the common tribunals of justice, such as an agreement in case of dispute to refer the same to arbitration, a court of equity will not any more than a court of law interfere to enforce the agreement, but it will leave the parties to their own good pleasure in regard to such agreements. The regular administration of justice might be greatly impeded or interfered with by such stipulations if they were specifically enforced."
In Stephenson v. P.F. and M.C. Ins. Co.,[] the court say: "While parties may impose as condition precedent to applications to the courts that they shall first have settled the amount to be recovered by an agreed mode, they cannot entirely close the access to the courts of law. The law and not the contract prescribes the remedy, and parties have no more right to enter into stipulations against a resort to the *453 courts for their remedy in a given case, than they have to provide a remedy prohibited by law; such stipulations are repugnant to the rest of the contract, and assume to divest courts of their established jurisdictions; as conditions precedent to an appeal to the courts, they are void." Many cases are cited in support of the rule thus laid down. Upon its own merits, this agreement cannot be sustained.
Does the agreement in question gain validity from the statute of Wisconsin, which has been quoted? Is the statute of the State of Wisconsin, which enacts that a corporation organized in another State shall not transact business within its limits, unless it stipulates in advance that it will not remove into the Federal courts any suit that may be commenced against it by a citizen of Wisconsin, a valid statute in respect to such requisition, under the Constitution of the United States?
The Constitution of the United States declares that the judicial power of the United States shall extend to all cases in law and equity arising under that Constitution, the laws of the United States, and to the treaties made or which shall be made under their authority, ... to controversies between a State and citizens of another State, and between citizens of different States.[*]
The jurisdiction of the Federal courts, under this clause of the Constitution, depends upon and is regulated by the laws of the United States. State legislation cannot confer jurisdiction upon the Federal courts, nor can it limit or restrict the authority given by Congress in pursuance of the Constitution. This has been held many times.[]
It has also been held many times, that a corporation is a citizen of the State by which it is created, and in which its principal place of business is situated, so far as that it can sue and be sued in the Federal courts. This court has repeatedly held that a corporation was a citizen of the State *454 creating it, within the clause of the Constitution extending the jurisdiction of the Federal courts to citizens of different States.[*]
The twelfth section of the Judiciary Act of 1789 provides that if a suit be commenced in any State court by a citizen of the State in which the suit is commenced, against a citizen of another State, where the matter in dispute exceeds $500, and the defendant at the time of entering his appearance shall file a petition for the removal of the cause for trial into the next Circuit Court of the United States, and shall offer good bail for his proceedings therein, "it shall be the duty of the State court to accept such security and proceed no farther in the cause."
This applies to all the citizens of another State, whether corporations, partnerships, or individuals. It confers an unqualified and unrestrained right to have the case transferred to the Federal courts upon giving the security required. In the case recently decided in this court, of Insurance Company v. Dunn,[] it was held that no power of action thereafter remained to the State court, and that every question, necessarily including that of its own jurisdiction, must be decided in the Federal court.
The statute of Wisconsin, however, provides as to a certain class of citizens of other States, to wit, foreign corporations, that they shall not exercise that right, and prohibits them from transacting their business within that State, unless they first enter into an agreement in writing that they will not claim or exercise that right.
The Home Insurance Company is a citizen of New York, within this provision of the Constitution. As such citizen of another State, it sought to exercise this right to remove to a Federal tribunal a suit commenced against itself in the State court of Wisconsin, where the amount involved exceeded the sum of $500. This right was denied to it by the *455 State court on the ground that it had made the agreement referred to, and that the statute of the State authorized and required the making of the agreement.
We are not able to distinguish this agreement and this requisition, in principle, from a similar one made in the case of an individual citizen of New York. A corporation has the same right to the protection of the laws as a natural citizen, and the same right to appeal to all the courts of the country. The rights of an individual are not superior in this respect to that of a corporation.
The State of Wisconsin can regulate its own corporations and the affairs of its own citizens, in subordination, however, to the Constitution of the United States. The requirement of an agreement like this from their own corporations would be brutum fulmen, because they possess no such right under the Constitution of the United States. A foreign citizen, whether natural or corporate, in this respect possesses a right not pertaining to one of her own citizens. There must necessarily be a difference between the status of the two in this respect.
We do not consider the question whether the State of Wisconsin can entirely exclude such corporations from its limits, nor what reasonable terms they may impose as a condition of their transacting business within the State. These questions have been before the court in other cases, but they do not arise here. In Paul v. Virginia,[*] Mr. Justice Field used language, in speaking of corporations, which has been supposed to sustain the statute in question. "Having (he says), no absolute right of recognition in other States, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those States may think proper to impose. They may exclude the foreign corporation entirely, they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest."
*456 So in the Bank of Augusta v. Earle,[*] the language of Chief Justice Tancy has been invoked for the same purpose.
In each of these cases, the general language of the learned justice is to be expounded with reference to the subject before him. They lay down principles in general terms which are to be understood only with reference to the facts in hand. Thus, the case in which the opinion was delivered by Mr. Justice Field was one involving the construction of that clause of the United States Constitution which declares that "the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States," and of that clause regulating commerce among the States, not of the one now before us. It involved the question whether the State might require a foreign insurance company to take a license for the transaction of its business, giving security for the payment of its debts, and decided that taking insurance risks was not a transaction of commerce, within the meaning of the two clauses of the Constitution cited. It had no reference to the clause giving to citizens of other States the right of litigation in the United States courts, and certainly had no bearing upon the right of corporations to resort to those courts, or the power of the State to limit and restrict such resort.
It was not intended to impair the force of the language used by Mr. Justice Curtis in the La Fayette Insurance Company v. French,[] where he says: "A corporation created by Indiana, can transact business in Ohio, only with the consent, express or implied, of the latter State. This consent may be accompanied by such conditions as Ohio may think fit to impose, and these conditions must be deemed valid and effectual by other States, and by this court; provided, they are not repugnant to the Constitution and laws of the United States, or inconsistent with those rules of public law which secure the jurisdiction and authority of each State from encroachment by all others, or that principle of natural justice which forbids condemnation without opportunity for *457 defence." Nearly the same language is used by Mr. Justice Nelson in Ducal v. The City of Chicago.[*]
None of the cases so much as intimate that conditions may be imposed which are repugnant to the Constitution and laws of the United States, or inconsistent with those rules of public law which secure the jurisdiction and authority of each State from encroachment by others.
The case of the Bank of Columbia v. Okely,[] is relied upon by the court below to sustain the statute and the agreement in question. In that case it was provided in the fourteenth section of the charter of the bank that whenever a borrower of the bank should make his note by an agreement in writing negotiable at the bank and neglect its payment when due, the president of the bank should cause a demand in writing to be served upon the delinquent, and if the money was not paid within ten days after such demand it was made lawful for the bank to present to the county clerk the note so unpaid, with proof of the demand, and to require him to issue an execution or attachment against the debtor. Before such execution could issue the bank was required to file an affidavit of the amount due on the note. "If the defendant shall dispute the whole or any part of the debt (the statute adds) on the return of the execution, the court shall order an issue to be joined and a trial to be had, and shall make such other proceedings that justice may be done in the speediest manner." This statute was sustained in the case cited. Mr. Key, for the plaintiff, argued in its support on the theory that the whole effect of the provision was to authorize the commencement of a suit by attachment instead of the usual common-law process. Mr. Jones, contra, contended that it was in violation of the provision of the constitution of Maryland and of the United States securing to parties the right of trial by jury when the value in controversy exceeded twenty dollars. In rendering the decision the court say: "This court would ponder long before it would sustain this action if we could be persuaded that the act in question produced a total prostration of the trial by *458 jury, or even involved the defendant in circumstances which rendered that right unavailing for his protection... . If the defendant does not avail himself of the right given to him of having an issue made up and the trial by jury, which is tendered to him by the act, it is presumable that he cannot dispute the justice of the claim."
We are not able to discover in this case any countenance for the statute of Wisconsin which we are considering.
On this branch of the case the conclusion is this:
1st. The Constitution of the United States secures to citizens of another State than that in which suit is brought an absolute right to remove their cases into the Federal court, upon compliance with the terms of the act of 1789.
2d. The statute of Wisconsin is an obstruction to this right, is repugnant to the Constitution of the United States and the laws in pursuance thereof, and is illegal and void.
3d. The agreement of the insurance company derives no support from an unconstitutional statute and is void, as it would be had no such statute been passed.
We are of opinion, for the reasons given, that the Winnebago County Court erred in proceeding in the case after the filing the petition and the giving the security required by the act of 1789, and that all subsequent proceedings in the State court are illegal and should be vacated. The judgment in that court, and the judgment in the Supreme Court of Wisconsin, should be REVERSED, and the prayer of the petition for removal should be GRANTED.
ORDERED ACCORDINGLY.
The CHIEF JUSTICE, with whom concurred Mr. Justice DAVIS, dissenting.
I cannot concur in the judgment which has just been announced. A State has the right to exclude foreign insurance companies from the transaction of business within its jurisdiction. Such is the settled law in this court.[*] The right to impose conditions upon admission follows, as a necessary *459 consequence, from the right to exclude altogether. The State of Wisconsin has made it a condition of admission that the company shall submit to be sued in the courts she has provided for the settlement of the rights of her own citizens. That is no more than saying that the foreign company must, for the purposes of all litigation growing out of the business transacted there, renounce its foreign citizenship and become pro tanto a citizen of that State. There is no hardship in this, for it imposes no greater burden than rests upon home companies and home insurers.
This insurance company accepted this condition, and was thus enabled to make the contract sued upon. Having received the benefits of its renunciation the revocation comes too late.
The State court had jurisdiction to try the question of citizenship upon the petition to transfer. Upon the facts I think it was authorized to find that the company was, for all the purposes of that action, a citizen of Wisconsin, and refuse the order of removal.
NOTES
[*] 18 New York, 128.
[] Nute v. Hamilton Insurance Co., 6 Gray, 174; Cobb v. New England Marine Insurance Co., Ib. 192; Hobbs v. Manhattan Insurance Co., 56 Maine, 421; Stephenson v. P.F. and M. Insurance Co., 54 Id. 70; Scott v. Avery, 5 House of Lords Cases, 811.
[] Kill v. Hollester, 1 Wilson, 129.
[*] 8 Term, 139.
[] Section 670.
[] 54 Maine, 70.
[*] Art. 3, § 2.
[] Railway Co. v. Whitton, 13 Wallace, 286; Payne v. Hook, 7 Id. 427; The Moses Tavlor. 4 Id. 411, and cases cited.
[*] Express Co. v. Kountze, 8 Wallace, 342; Cowles v. Mercer Co., 7 Id. 118; Railway v. Whitton, 13 Id. 275; Ohio and Mississippi Railroad Co., v. Wheeler, 1 Black, 286.
[] 19 Wallace, 214.
[*] 8 Wallace, 168.
[*] 13 Peters, 519.
[] 18 Howard, 407.
[*] 10 Wallace, 410.
[] 4 Wheaton, 235.
[*] Paul v. Virginia, 8 Wallace, 181; Ducat v. Chicago, 10 Id. 410; Bank of Augusta v. Earle, 13 Peters, 586.