MOORE, Adm'r, etc., *v.* CHICAGO, ST. P., M. & O. RY. Co.

MAHONEY *v.* CHICAGO, M. & ST. P. RY. Co.

*(Circuit Court, D. Minnesota.* October 24, 1884.)

1. REMOVAL OF CAUSE—CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY—SP. LAWS MINN. 1881, CH. 219.

Chapter 219, Sp. Laws Minn. 1881, entitled "An act to authorize the Chicago, St. Paul, Minneapolis & Omaha Railway Company to acquire, construct, maintain, and operate railroads in the state of Minnesota," not purporting to create a new corporation, but declaring that for certain purposes the foreign shall be deemed to be a domestic corporation, must be regarded as simply an enabling act, and the railway company, which was a Wisconsin corporation, is still one, and as such has the right to remove a case for trial from the state court to the federal court.

2. SAME—PROVISO PREVENTING REMOVAL VOID.

As the only scope and effect of the provision in the act, that the railway company shall be deemed to be a domestic corporation " in all suits and proceedings upon causes of action arising in this state in which it shall be a party," is to deter it from the right to submit certain controversies to the judgment of the federal court, this proviso must be held void; following *Insurance Co.* v. *Morse,* 20 Wall. 445, and distinguishing *Stout* v. *Railroad Co.* 8 FED. REP. 794.

On Motion to Remand.

*Lovely & Morgan,* for plaintiff.

*John D. Howe,* for defendant.

BREWER, J. The question in this case is whether the defendant is a Minnesota or Wisconsin corporation, and this turns mainly on the scope and effect of chapter 219, Sp. Laws Minn. 1881. The argument of counsel for plaintiff is brief and clear. They say that the question is one solely of legislative intent, and that the intent is manifest, because the act not only confers all the powers, privileges, and functions of a domestic corporation, but also, in express terms, provides "that in all suits and proceedings upon causes of action arising in this state, in which the said Chicago, St. Paul, Minneapolis & Omaha Railway Company shall be a party, it shall be deemed to be, for all purposes, a domestic corporation, and not otherwise." The argument on the other side cannot be stated briefly,—is not so clear and easy of comprehension,—and yet I think it determines the true solution of the question.

1. There is nothing in the title of the act to indicate an intent to create a corporation. It reads: "An act to authorize the Chicago, St. Paul, Minneapolis & Omaha Railway Company to acquire, construct, maintain, and operate railroads in the state of Minnesota." This discloses simply an intent to grant certain rights—included in which is not the right to incorporate—to an existing company. The constitution, art. 4, § 27, provides that "no law shall embrace more than one subject, which shall be expressed in its title." Did the legislature intend more than was named in this title, and, if it did, is the added matter valid? *State* v. *Kinsella,* 14 Minn. 524, (Gil. 395.)

v.21F,no.13—52

2. The constitution, art. 10, § 2, reads: "No corporation shall be formed under special acts except for municipal purposes." Neither constitution nor statutes have extraterritorial operation. There was no Minnesota corporation answering to the description in existence before this act. This is a special act. Did the legislature intend, and, if so intended, had it the power, to evade the restrictions of the constitution and create a new railroad corporation by a special act? I am aware of the decisions of the supreme court of the state sustaining special acts granting additional powers to existing corporations as not within the constitutional prohibition of the formation of corporations; and counsel speak of this act as the adoption of a corporation chartered in another state. But the existing was a foreign corporation, and if this act did not create a second and new corporation, but only granted powers and privileges to the one existing, the right of removal to the federal court exists. Doubtless, the methods of creating corporations are within legislative discretion, and were it not for this constitutional provision the existence of a general law would not inhibit the granting of a special charter. But with that the birth of a new corporation must be traced to the powers and grants of some general statute. A statute must be supported rather than overthrown, and the intent of the legislature must be made to harmonize with rather than antagonize its powers and the constitutional limitations.

3. The act names "The Chicago, St. Paul, Minneapolis & Omaha Railway Company, a corporation created and existing under the laws of the state of Wisconsin," and all its various grants of powers and privileges are to the "said company." Significant among these grants is that of "all the rights, powers, franchises, privileges, and immunities, including the power of eminent domain, conferred by the laws of the state of Minnesota upon railway companies organized thereunder." In other words, it grants to this foreign corporation all the rights, powers, etc., given by Minnesota laws to home corporations. Clearly this discloses a mere enabling act, and were it not for the provisos at the close of the section I do not think there would be any doubt. Those provisos read as follows:

"And provided, further, that the said Chicago, St. Paul, Minneapolis & Omaha Railway Company, its successors and assigns, shall, in exercising the power of eminent domain by this act conferred, and in all proceedings and appeals therein, be taken and held in all courts and places to be a domestic corporation; and provided, further, that in all suits and proceedings upon causes of action arising in this state in which the said Chicago, St. Paul, Minneapolis & Omaha Railway Company shall be a party, shall be deemed to be for all purposes a domestic corporation, and not otherwise."

Now, at first reading, these seem to sustain the views of counsel for plaintiff; but notice these matters. They do not provide that the foreign corporation accepting the privileges granted shall become a domestic corporation, but only that for certain purposes it shall be

deemed to be such. In other words, taking the act as a whole, it grants to a foreign corporation vast privileges upon condition that, as to certain matters, it shall accept the responsibilities of and be treated as a home corporation. But this is mere license. It grants to a citizen of Wisconsin certain privileges, provided it will consent for certain purposes to be considered a citizen of Minnesota. But, if a citizen of Minnesota, what need of such provisos? And can one be a citizen for certain purposes and for them only? Let an action be brought by a citizen of Minnesota against this defendant for injuries done in the state of Nebraska, and can it plead that it is a domestic corporation and not subject to the jurisdiction of the federal courts? Where in the statutes will such a plea find support? Obviously, the true reading, the intent of this act as a whole, was to give certain privileges to a foreign corporation on condition that for certain purposes it should consent to be treated as a domestic corporation, and not to create a domestic corporation, or to give to a foreign the right to become a domestic corporation. Regarded in that light it is a mere enabling act.

And again, were this the creation of a new corporation, who are the stockholders? Who responds to the liability imposed by section 3, art. 10, of the constitution? Has a railroad corporation of Wisconsin the power to bind its stockholders to the obligations of that section, or indeed to bind itself? *State* v. *Sherman,* 22 Ohio St. 411. I do not enter into this inquiry, because, as I read this act, it stops a little this side of that query. It does not purport to create a domestic corporation; it simply declares that for certain purposes it shall be deemed to be such. And what are those purposes? *First,* for the exercise of the right of eminent domain; and, *second,* for suits for causes of action arising in Minnesota. When it is borne in mind that the power of eminent domain had already been expressly conferred upon this corporation by the previous words of the section, it is obvious that the whole scope of these provisos is that for certain limited litigations this foreign corporation shall be deemed domestic. And a little reflection will indicate that, outside of mere matters of procedure, such as liability to attachment, security for costs, etc., the only scope and effect of this proviso is to debar this corporation from the right to submit certain controversies to the judgment of the federal courts. It has been held by the supreme court that a condition imposed upon a foreign corporation of doing business within a state that it will not remove its controversies to the federal courts, is void. *Insurance Co.* v. *Morse,* 20 Wall. 445. Can this proviso be regarded in any other light than as an indirect way of attempting to secure the same result? I think not. This is very different legislation from that considered by this court in *Stout* v. *Railroad Co.* 8 Fed. Rep. 794. There was a general statute in all respects providing that a foreign corporation complying with its terms should become a legal corporation of the state, with all the rights, privileges, and franchises

of such.   That, obviously, only prescribed one method of acquiring corporate existence, and did not purport to determine the conditions under which a foreign corporation should exercise privileges and acquire rights in the state.

Another matter tends to confirm the view I have taken.   On the same day with the act under consideration two other acts affecting the same company were passed.   In each of these, the *status* of the company as a foreign corporation was expressly recognized, with, in one, a proviso, as here, that for purposes of exercising the power of eminent domain the company should be treated as a domestic corporation.   But, without pursuing this inquiry further, I hold that this legislation, not purporting to create a new corporation, but declaring that for certain purposes the foreign shall be deemed to be a domestic corporation, must be regarded as simply an enabling act; that the corporation, which was a Wisconsin corporation, is still one, and as such has the right to remove this case for trial to the federal courts.

The motion to remand must be overruled.

The case of *Mahoney* v. *Chicago, M. & St. P. Ry. Co.* involves substantially the same question as above, and the same order will be made in that case.