GÓMEZ, PLAINTIFF AND APPELLEE, *v.* TORO, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan, Section 2, in an Action of Debt.

MOTION for Change of Venue.

No. 1390.—Decided March 29, 1916.

CHANGE OF VENUE—CONSTRUCTION OF LAW.—The origin of sections 76 and 77 of the Code of Civil Procedure is different from that of the code as a whole. The provisions of said sections are inspired by articles 56, 57 and 58 of the old Law of Civil Procedure.

ID.—SUBMISSION OF PARTIES—JURISDICTION.—Subdivision 1 of section 77 of the
      Code of Civil Procedure includes the express submission referred to in
      article 57 of the old law, and subdivisions 2 and 3 the implied submission
      referred to in article 58 of the same law, and given the form in which the
      said article is worded, a written agreement to submit to a particular court
      having statutory jurisdiction over the subject-matter of the agreement is
      sufficient to bind the parties.

ID.—JURISDICTION—AGREEMENT—HONESTY, GOOD USAGE OR PUBLIC POLICY.—Pre-
      vious submission of the parties to a court of competent jurisdiction is a
      lawful agreement, and when made in legal form is binding upon the person
      who submits himself and even upon his heirs, and is not contrary to honesty,
      good usage or public policy.

ID.—SUBMISSION OF PARTIES—JURISDICTION—AMERICAN AND SPANISH JURISPRU-
      DENCE.—The only difference between American and Spanish jurisprudence in
      the matter of submission is that according to the former an action must be
      brought before the party can submit himself, and according to the latter
      such submission may be agreed upon in the contract which may give rise to
      the action. The principal of voluntary submission is recognized by the juris-
      prudence of both countries.

The facts are stated in the opinion.

*Mr. Arturo Aponte, Jr.,* for the appellant.

*Messrs. Bosch & Soto* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from an order of the District Court of San Juan, Section 2, overruling a motion for change of venue.

The action is one of debt on a promissory note, which is copied into the complaint and reads as follows:

"$2,500, U. S. Cy.                          Due November 20, 1914.

"I promise to pay to Manuel López Gómez, or order, at his place of business in San Juan on November 20, 1914, the sum of two thousand five hundred dollars for value received. The said sum shall bear interest at the rate of_____annually from_____until the date of its payment. I expressly submit myself to the jurisdiction of the Insular courts of San Juan and agree to pay the costs and expenses which may be incurred in the recovery of the said amount, including the fees of the attorney who may be employed to bring suit.

"SAN JUAN, PORTO RICO, *May 20, 1914.*

                                          "JOSÉ TORO RÍOS."

The defendant having been summoned in Humacao, within the proper time he filed a demurrer on the sole ground that

the complaint "is uncertain as regards the payment of interest at the rate of 6 per cent from November 20, 1914, inasmuch as such obligation does not appear upon the face of the note transcribed in the said complaint, the said complaint being uncertain in that respect." On the same day on which the defendant filed the demurrer he also filed a motion for change of venue to the district court of his domicile on the ground that it was a personal action.

The court overruled the motion and undoubtedly its ruling was based on sections 76 and 77 of the Code of Civil Procedure, which sections, as we said in the case of *Hernaiz, Targa & Co.* v. *Vivas,* 20 P. R. R. 99, are of an origin different from that of the code as a whole. The provisions of said sections are inspired by articles 56, 57 and 58 of the old Law of Civil Procedure. For greater lucidity and in order to construe them correctly, we will compare the said statutes, then refer to the jurisprudence relating to the latter, and finally determine the scope and the effect of the former.

The sections cited from the Code of Civil Procedure now in force in this Island read as follows:

"Section 76.—In accordance with its jurisdiction, a court shall have cognizance of the suits to which the maintenance of all kinds of actions may give rise, when the parties may have agreed to submit the suit to decision of (such) court.

"Section 77.—The submission shall be understood to be made:

"1. By the written agreement of the parties.

"2. By the plaintiff through the mere act of applying to the court and filing the complaint.

"3. By the defendant when, after his appearance in court, he takes any step other than to request that the trial be held in the proper court."

And those of the former Law of Civil Procedure are as follows:

"Article 56.—Any judge impliedly or expressly agreed upon by the litigants shall be competent to take cognizance of the suits arising from actions of all kinds.

"This submission, however, can only be made to a judge exer-

cising ordinary jurisdiction and who is competent to take cognizance of questions similar to and of the same kind as the one submitted.

"Article 57.—By an express submission shall be understood that made by the parties in interest clearly and in definite terms *renouncing their own rights* (waiving the statutory jurisdiction), and unequivocally designating the judge agreed upon to determine the question.

"Article 58.—An implied submission is made:

"1. By the plaintiff, by the act of filing his complaint before the judge.

"2. By the defendant when, after his appearance is entered in the action, he takes any further steps therein, except to formally object to the jurisdiction of the judge by declinature." (War Department translation).

As may be seen, section 76 of the new code is the same as article 56 of the old law. The final paragraph of the latter is condensed in the words "In accordance with its jurisdiction" of the former, and instead of the words "expressly or impliedly" of the first paragraph of article 56, section 76 refers to submission in general.

Section 77 of the new code includes all the cases covered by articles 57 and 58 of the former code, but, following the limitations of article 56, the Spanish legislators define in articles 57 and 58 cases of express and implied submission, while the Porto Rican legislators, in harmony with the provision of section 76, include in section 77 all cases of submission in general, although it is clear that subdivision 1 of section 77 covers express submission and subdivisions 2 and 3 of the same refer to implied submission, with the only difference that according to the present code an agreement in writing to that effect is sufficient to constitute submission, whereas under the old law it was necessary to waive the statutory jurisdiction and designate the court to which the parties submitted. The new code preserves the principle of the old law but clothes it in simpler form. Manifestly an express waiver of jurisdiction is unnecessary because the express submission of the parties clearly involves such waiver.

Let us now see what construction was placed upon the provisions of the old law. In commenting thereon Manresa says:

"*Submission may be express or implied.* It is *express* when the parties *clearly* and in *definite terms* waive the statutory jurisdiction and designate *with all precision* the court to which they submit themselves, and *implied* when by acts or steps taken before a court without jurisdiction they let it be understood that they submit themselves to its jurisdiction.

"In order that the submission may be understood as *express* and have the corresponding effect, there must be not the slightest doubt of the intention and will of the parties, not only as regards the waiver of the statutory jurisdiction, but also as to the court to which they wish to submit themselves. If either of these two conditions is lacking the submission will be ineffective, because article 57 of the law and articles 3 and 304 respectively of the two statutes heretofore cited require the union of the two conditions. Conjectures will not suffice. A general waiver of the customary kind usually made in some deeds will not be good. The waiver of the statutory jurisdiction must be stated clearly and in definite terms as must be also the designation of the court to which they submit themselves.

"It is best that after setting forth the nature of the transaction in the instrument executed for the purpose, the parties state clearly and in a definite manner therein that they waive the statutory jurisdiction and agree to submit themselves to the jurisdiction of the court of first instance of such and such a place for the decision of any action or actions that may arise from the transaction, or from the enforcement of the said contract. Should there be two or more judges in that place, in accordance with article 59 which we shall review later, the submission must be made to any one of them and not to a particular one." I Manresa, Law of Civil Procedure, 163.

In its judgments of June 11, 1858, April 5, 1861, June 6, 1872, and January 9, 1873, the Supreme Court of Spain held that the waiver of jurisdiction is a lawful and permissible agreement and that when the parties to a contract waive the same therein and submit themselves expressly to the jurisdiction of a certain place, the judge of that place has exclusive jurisdiction of the matter.

As may be seen both from the jurisprudence of the Su-

preme Court of Spain and the opinion of the most distinguished of the commentators on the Law of Civil Procedure, two requirements must be complied with in order that the submission may be understood to be complete—namely, the waiver of jurisdiction and the designation of the court to which the contracting parties submit themselves.

Now, given the form in which the statute of Porto Rico is worded, is it necessary to .comply with the two requirements to which Manresa and the Supreme Court of Spain refer? From the comparative study which we have made it may be clearly inferred that it is not. A written agreement to submit to a particular court having statutory jurisdiction over the subject-matter of the agreement is sufficient under the present laws of Porto Rico to bind the parties. And as such an agreement was made in the present case, it is necessary to conclude that the District Court of San Juan, Section 2, was justified in overruling the motion of the defendant for a change of venue, and that consequently its ruling should be affirmed by this court.

It would be unnecessary for us to prolong the review of this case if the defendant had not cited in support of his motion for change of venue to the place of his domicile the American jurisprudence laid down in the case of *Hall* v. *People's Mutual Life Ins. Co.*, 6 Gray, 185, and *Insurance Company* v. *Morse*, 87 U. S. 445.

We have considered the cases cited and think that they are not applicable. In the new Code of Civil Procedure the Porto Rican legislators intended to preserve, and did preserve, the principle of the old code regarding previous submission of the parties. The said provision is clear and has been construed repeatedly, as we have seen, to mean that previous submission is a lawful agreement and when made in legal form is binding upon the person who submits himself, and even upon his heirs. Such construction was thoroughly understood and practiced in Porto Rico and is not contrary to honesty, good usage or public policy. Appar-

ently the only difference between the American and Spanish jurisprudence is that according to the former an action must be begun before the party can submit himself, and according to the latter such submission may be agreed upon in the contract which may give rise to the action. Therefore, the principle of voluntary submission, which, in our opinion, is the essential element, is recognized by the jurisprudence of both countries. For this reason, although our present Code of Civil Procedure is almost entirely of American origin, its sections 76 and 77 can easily subsist with their old construction. No fundamental right recognized by the present laws is violated thereby, and the legislative intent, which undoubtedly was to preserve a familiar contractual formula in use for many years in this Island, is complied with.

The hypothetical case that a person may be compelled perhaps to defend himself outside of the jurisdiction of his domicile because of a false document in which his submission appears, is not before us. In the case before us for consideration and decision, the defendant, in basing his demurrer on the sole ground that the manner of claiming the interest was uncertain, impliedly admitted the authenticity of the instrument in which his submission is shown.

Nor is any question involved here between Insular and Federal courts. This is a case referring to two courts created by the same Legislature which according to law have equal jurisdiction within their respective districts.

The order appealed from should be

*Affirmed.*

Chief Justice Hernández and Justices Aldrey and Hutchison concurred.

Mr. Justice Wolf dissented.

### DISSENTING OPINION OF MR. JUSTICE WOLF.

The decision of the court in this case is, as I understand it, founded on the theory that sections 76 and 77 of our Code

of Civil Procedure, for the purposes of this case, are virtually a re-enactment of similar provisions of the Spanish Code of Civil Procedure, and hence it must be presumed that they were adopted with the construction put upon them by the Spanish courts and commentators.

It is well known that the Code of Civil Procedure in its entirety was taken from Idaho, and hence I think the words generally used in that code must be given the construction they have always received in American courts. *People* v. *Rosaly,* 227 U. S. 270; *Schick* v. *United States,* 195 U. S. 65. The system of suits and the jurisdiction of the courts are considerably different, and it was the evident intention of the Legislature of Porto Rico to give the Island an American system of civil procedure. As the opinion points out, there are minor omissions in the adoption of the former provisions of the Spanish law, but I think that section 76 in itself presupposes that a suit has been filed. It seems to me that before there can be a submission there must be a suit or, at least, a cause of action; and there is no cause of action on a promissory note until there is a default of some kind. To say that there can be a previous submission of a suit or a cause of action yet to arise is to state a contradiction in terms.

The majority opinion conceded the fact that an agreement of this kind could not be supported in the United States.

The decision of the Supreme Court of the United States in *Insurance Co.* v. *Morse,* 87 U. S. 445, is clear on that point, and the reasoning of the court is in no way confined to the right to transfer a case from a state court to a federal court when it says that a party does not waive such a right by a contract in advance.

The decisions of the Supreme Court of Massachusetts in the case of *Hall* v. *Mutual Fire Ins. Co.,* 6 Gray, 185, and *Nute* v. *Hamilton Ins. Co.,* 6 Gray, 174, are applicable and are the leading cases. Mr. Chief Justice Shaw points out that a stipulation in a contract of this kind is merely an

executory contract which could not be specifically enforced, The cases to which I have referred are cited in a note in Brown on Jurisdiction, Second Edition, page 29, to the effect that an agreement to submit to arbitration or before a particular forum is invalid to bind a defendant.

For the sake of argument it might be admitted that the Legislature could frame a law by which a defendant would be compelled to try his case in a court to which he had agreed to submit in case of controversy, but it seems to me that the individual legislator, if he had desired to do so in this case, has failed to use apt words. Section 81 of the Code of Civil Procedure provides that cases of this kind must be tried in the district court where the defendant resides at the commencement of the action. To defeat this right the defendant must submit to some other court, and I do not think that under any part of Title V of the Code of Civil Procedure there is any indication that the Legislature intended that the word "submission" should mean an agreement to submit made before a controversy has arisen; in other words, that when the Legislature adopted an American code the presumption would be that the public policy with regard thereto was the American policy, and that this presumption is not overcome by adopting isolated and incomplete paragraphs out of previous codes in force, even if it be admitted, which I do not, that the words of the Spanish code are susceptible of the interpretation given them.