310 F.2d 701
 The UNITED STATES of America, for the Use of KOPPERS
COMPANY, Inc., a Delaware Corporation, Appellee,
v.
FIVE BORO CONSTRUCTION CORPORATION and Continental Casualty
Company, Appellants.
 No. 8682.
 United States Court of Appeals Fourth Circuit.
 Argued Oct. 2, 1962.
Decided Nov. 30, 1962.
 
 1
 D.A. Brockinton, Jr., Charleston, S.C. (Brockinton & Brockinton, Charleston, S.C., and A.J. Siminerio, New York City, on brief), for appellants.
 
 
 2
 Henry B. Smythe, Charleston, S.C. (Buist, Buist, Smythe & Smythe, Charleston, S.C., on brief), for appellee.
 
 
 3
 Before HAYNSWORTH and BELL, Circuit Judges, and HUTCHESON, District judge.
 
 
 4
 HUTCHESON, District Judge.
 
 
 5
 This action was brought in the United States District Court for the Eastern District of South Carolina under the Miller Act to recover an unpaid balance for certain materials purchased and delivered in the prosecution of a public work of the United States Navy. The appellant, Five Boro Construction Corporation, hereafter called Five Boro, was the prime contractor for the construction of the Polaris Missile Assembly Facility at the United States Naval Ammunition Depot at Charleston. The other appellant, Continental Casualty Company, hereafter called Continental was surety on the performance bond. One of its subcontractors was Chris Kallis, doing business as Dixon Industrial Track Construction Company, hereafter called Dixon. Under its contract, Dixon undertook to furnish labor and materials for railroad track rehabilitation and construction work on the job. The Polaris Missile Base was a part of the Naval Ammunition Depot and was contiguous thereto. Dixon was also subcontractor of Ruscon Construction Company, the Navy's prime contractor under a separate Navy contract for the construction of a separate railroad track on the Naval Ammunition Depot.
 
 
 6
 In May, 1959, Koppers Company, Incorporated, hereafter called Koppers, entered into a written proposal to furnish Dixon certain material, consisting of cross ties, switch ties and crossing timbers, according to specifications and at prices agreed upon. This material was for use on the Five Boro job. Becoming apprehensive regarding Dixon's responsibility, in July, 1959, Koppers refused to make further deliveries unless Five Boro accepted responsibility for prompt payment for the ties and other material. As a result of discussions between Koppers, Five Boro and Dixon, Five Boro wrote Koppers two letters dated July 16 and July 29, in which Five Boro agreed to make payment by checks jointly payable to Dixon and Koppers 'for materials used on our Polaris project'. Thereafter, from time to time, Dixon would send drivers with its trucks to Koppers' plant to pick up material. The drivers advised Koppers' agent making delivery of the job for which the material was to be used. Notations to that effect were placed on the delivery ticket and after receiving the material, the drivers receipted for the quantity and retained one copy of the ticket. From the information on these tickets, Koppers prepared invoices on each day delivery was made and promptly sent copies to Five Boro in accordance with the request in its letters of July 16, 1959. As a result, Five Boro was advised almost daily of the amount of material Dixon was receiving from Koppers for use on the Five Boro job.
 
 
 7
 Early in November, 1959, Five Boro discovered what appeared to be a discrepancy between the ties invoiced by Koppers for its Polaris job and the ties actually used on the job. At some unspecified date in December, 1959, subsequent to final delivery on December 15th, Five Boro advised Koppers of its discovery.
 
 
 8
 While the rocord is not entirely clear this point, it appears probable that the material not received by Five Boro was used on the Ruscon contract. However, if such diversion occurred it is not material here. During the interval between December 15, 1959, and March 1, 1960, discussions took place between Five Boro and Koppers and Five Boro made some payment on account. This payment is not involved in the present controversy. In the meantime, Dixon defaulted on its subcontract and left the job.
 
 
 9
 By letter dated March 1, 1960, within nniety days of the last delivery of material to Dixon, Koppers gave the necessary notice to Five Boro of its claim for unpaid material, as required under the Miller Act. It became necessary that Five Boro purchase additional material, but in view of the situation which had developed, Koppers refused to deliver any more material. On June 14, 1960, Koppers wrote Five Boro a registered letter demanding payment and mailed copy to Continental Casualty Company, the surety on the bond of Five Boro. The contentions of Five Boro and Continental may be boiled down to somewhat narrow issues.
 
 
 10
 1. It is contended that in view of the agreement set forth in the letters of July 16, and 29, 1959, respectively, Koppers waived its rights as Dixon's supplier and is estopped to recover under the Miller Act.
 
 
 11
 2. That Koppers failed to bear the burden of establishing the quantify of material supplied to Dixon because, it is contended, the delivery tickets and notations thereon were not admissible in evidnece.
 
 
 12
 3. That the allowance of interest on the balance due was improper.
 
 
 13
 Five Boro and Continental take the position that because Koppers required Five Boro to make payments in the manner heretofore recited, Koppers is not entitled to the protection provided for materialmen under the Act (Title 40 U.S.C.A. 270a). It is their contention that a materialman in a contractual relationship with the prime contractor relating to materials supplied is deprived of his rights under the Miller Act. With this we do not agree. It is clear that the Miller Act was intended to give the right of recovery to one who has furnished material in the prosecution of the work upon condition that he complies with the terms of the Act, including the giving of notice. Conceivably the supplier may waive his rights. Such waiver occurs if he fails to comply with the Act. There is nothing in this case to show any waiver or intention to waive its rights by Koppers. Koppers became fearful that Dixon would be unable to meet payments as contemplated. Koppers might have continued supplying material until the completion of the job and then proceeded against the prime contractor and its surety. On the other hand, Koppers might have refused to make further deliveries because of failure by Dixon to pay as agreed. This would have caused delay. In that situation Five Boro agreed to make payment to Dixon by checks drawn jointly to Dixon and Koppers as the work progressed ment to Koppers as the work progressed instead of delay in payment until completion of the job, but a request for and the acceptance of additional security does not indicate an intention to waive the right to that already in hand.
 
 
 14
 Five Boro and Contiental point to the language contained in the letters from Five Boro to Koppers agreeing to make the checks payable 'for materials used on our Polaris project'. Because of this language, Five Boro and Continental say that their liability is limited to payment for only the material furnished by Koppers which was actually used on the Polaris project. Stated somewhat differently, they seek to hold Koppers responsible for the failure of Dixon or Dixon's employees to deliver to the proper job site material received by them from Koppers under accepted business practices. This would be to hold that Koppers was required to follow the material to the job site or, if followed to a logical conclusion, until it was physically incorporated in the construction.
 
 
 15
 To state the contention of appellants would seem sufficient to supply the answer. The subject is so exhaustively and ably disposed of by the opinion of Judge Gilliam in United States for the use of Color-Craft Corporation v. Dickstein, D.C., 157 F.Supp. 126, pages 129 and 130, that all remaining to be said on this point is that Koppers is entitled to recover on its claim.
 
 
 16
 At the trial, the delivery tickets were admitted in evidnece over the objection of Five Boro and Contiental. The admissibility of this evidnece was clearly proper under Title 28 U.S.C.A. 1732(a). See also United States v. Grayson, 2 Cir., 166 F.2d 863, page 869.
 
 
 17
 The tickets are evidnece of delivery. Copies were given Dixon's representatives when deliveries were made. In addition, invoices prepared from the tickets were sent to Five Boro immediately after delivery of the material destined for its job. If the material was not received on the job Five Boro had ample opportunity to know it. Certainly Koppers had no means of Knowing it was not received. If there was an explanation for non-receipt or any questions as to the authenticity of the tickets, proof concerning such an issue should have come from Five Boro or its subcontractor, Dixon, whose employees signed the tickets. Surely Koppers could not be expected to round up Dixon's truck drivers to testify to their signatures.
 
 
 18
 This leaves for determination the question concerning interest. The appellee is clearly entitled to interest as allowed by the district court. See South Carolina Code of 1952, Sections 8-2 and 12-8. Also United States for the use of E. J. Bartelle v. Huffman Construction Company, ,.d,.C. 163 F.Supp. 296, and United States for Use of Weston & Brooker Co. v. Continental Casualty Company, 4 Cir., 303 F.2d 91.
 
 
 19
 The judgment of the district court is correct and it is affirmed with costs to Koppers.
 
 
 20
 Affirmed.