**UNITED STATES of America for the Use of RAY GAINS, INC.,** Plaintiff,

v.

**ESSENTIAL CONSTRUCTION CO. and the St. Paul Insurance Companies,** Defendants.

Civ. A. No. 17071.

United States District Court
D. Maryland.

Dec. 22, 1966.

716

M. Michael Cramer and Sisk & Cramer, Washington, D. C., for plaintiff.

Jerrold Morgulas, M. Carl Levine, Morgulas & Foreman, New York City, and Sidney C. Miller, Baltimore, Md., for defendants.

HARVEY, District Judge.

In this Miller Act suit, a subcontractor ("Gains") is seeking to recover from the general contractor and its surety sums allegedly due under a written agreement covering a part of the work involved in the construction of enlisted men's barracks and mess at the United States Naval Academy, Annapolis, Maryland. Essential Construction Co., Inc. ("Essential"), a New York corporation with its main office in New Jersey, was awarded the principal contract by the Bureau of Yards and Docks of the Department of the Navy. Essential entered into a written agreement dated August 6, 1954 with Gains, whereby the latter would do all the concrete and cement work required under the principal contract. Pursuant to the provisions of the Miller Act, 40 U.S.C.A. §§ 270a and 270b, a payment bond was furnished by St. Paul Fire and Marine Insurance Company ("St. Paul").

By its amended complaint, Gains is claiming $99,148.15 with interest and costs from Essential and St. Paul by virtue of work performed under the subcontract. The defendants have filed a motion to dismiss together with an attached affidavit and the subcontract itself, contending that under the provisions of

Paragraph THIRTIETH of the subcontract Gains "has waived any and all rights to commence an action under Title 40, United States Code, § 270(b)."[1] Affidavits in opposition have been filed by Gains, and the parties have likewise filed pertinent portions of the general contract, which were incorporated by reference in the subcontract. Pursuant to Federal Rule 12(b), defendants' motion to dismiss is treated herein as one for summary judgment under Rule 56.

The subcontract of August 6, 1964, which forms the basis for this action, is a printed form contract prepared by Essential and consisting of thirteen pages together with a two page rider. Page 1 of the subcontract states that Essential has entered into a contract dated June 26, 1964 with the Department of the Navy for the construction of the enlisted men's barracks and mess at the United States Naval Academy, and further provides as follows:

"* * * and which contract, for all purposes under this agreement includes the advertisement for bids, instructions to bidders addenda, the CONTRACTOR'S proposal as accepted by the OWNER, the form of contract, general conditions, special conditions, specifications, drawings, plans and revisions thereof, alternates and amendments to any of the foregoing, all of which documents in their entirety are hereinafter called the 'principal contract' * * *".

Under Paragraph FIRST, Gains agrees to do all the concrete and cement work required under the principal contract, at a price fixed at $241,750 by Paragraph TWENTY-SECOND.

Paragraph THIRTIETH of this agreement provides as follows:

"Any controversy or claim arising out of or relating to this agreement or the breach thereof, provision for the determination of which is not made elsewhere in this agreement, shall be

1. Other grounds mentioned in defendants' motion to dismiss were not pressed either in defendants' memoranda or in argument

and may be presumed to have been abandoned.

settled by the Courts of the State of New York, New York County, which shall have exclusive jurisdiction over every party in connection with any such dispute, and the SUBCONTRACTOR agrees at any and all times to become a party to and be bound by the decision in any litigation with the CONTRACTOR and/or any other subcontractor or subcontractors as the CONTRACTOR may at any time and from time to time direct. The CONTRACTOR and the SUBCONTRACTOR hereby submit to such New York jurisdiction as herein provided. Service of a summons or of a notice of litigation hereunder shall be sufficient if made by registered mail directed to the party at its respective address given above. The cost of such suit shall be borne equally unless otherwise determined by the court. In that regard SUBCONTRACTOR hereby waives any right at law to file a lien of any kind whatsoever and agrees that litigation as herein set forth is its sole and exclusive remedy."

There are thirty-nine numbered paragraphs in this agreement, and it should be noted that most numbered paragraphs have in the margin notations indicating the content of such paragraph, as for example, "DISPUTES", "NOTICE", "PAYMENT", etc. The notation in the left-hand margin opposite the THIRTIETH Paragraph is "ARBITRATION".

Defendants' position is that under Paragraph THIRTIETH Gains may sue only in the courts of the State of New York and that the instant action in this Court, should, therefore, be dismissed. Defendants readily concede that the New York state courts cannot entertain an action on a Miller Act bond. The result would, therefore, be that any suit in New York would be a common law action against Essential only, since St. Paul could not be joined in such suit as a party defendant. Two questions are presented by the defendants' motion: first, whether the contract in its entirety should be construed as requiring that any suit thereunder can be brought only in the New York courts; and secondly, if so

construed, whether such a contractual provision is valid and would defeat the Miller Act jurisdiction of this Court.

I

[1] Under Paragraph THIRTIETH it is not every controversy or claim arising under the agreement which must be settled by the courts of New York, but only those "provision for the determination of which is not made elsewhere in this agreement * * *". In finding the intention of the parties to a contract, a court should look to the entire agreement including portions of a principal contract which have been incorporated by reference in a subcontract. Frommeyer v. L. & R. Construction Co., 261 F.2d 879, 882, 69 A.L.R.2d 1040 (3d Cir. 1958).

The construction contract between Essential and the Department of the Navy dated June 26, 1964, which is expressly a part of the subcontract, contains the following provision on page 1:

"The contractor shall furnish a performance bond in the sum of $1,484,140 and a payment bond in the sum of $742,070."

§ 1.5 of the specifications, also a part of the subcontract, further provides:

"*Performance and payment bonds*, executed on Standard Forms 25 and 25A revised November 1950, respectively, will be required."

The contract papers further show that performance and payment bonds on Standard Forms 25 and 25A were in fact executed by Essential and St. Paul on July 1, 1964. Instruction No. 1 of such payment bond provides as follows:

"This form, for the protection of persons supplying labor and material, shall be used whenever a payment bond is required under the act of August 24, 1935, 49 Stat. 793, as amended (40 U.S.C. 270a–270e). It may also be used in any other case in which a payment bond is to be required. There shall be no deviation from this form except as authorized by the General Services Administration."

Under the provisions quoted above, Essential is required by the prime contract to furnish a payment bond on standard government forms. Such a bond was in fact supplied with St. Paul as the surety, and the bond itself indicates that such form should be used whenever a payment bond is required under the Miller Act. The provisions of 40 U.S. C.A. § 270a require a payment bond for this work being performed at the United States Naval Academy, since the contract exceeded $2,000 in amount.

Such references to a bond and to the Miller Act in the principal contract, specifications, and bond forms show that the principal contractor and the Department of the Navy intended that a Miller Act bond would be required for this construction job. These provisions are incorporated into the subcontract by reference, and since suit under a Miller Act bond may by law be brought only in the United States District Court for the district in which the contract was to be performed and not elsewhere,[2] such provisions in effect conflict with the printed language in the subcontract indicating that controversies thereunder should be settled in the New York State courts.

All of the language of Essential's 13-page subcontract is printed except for blanks which have been left for the date, name and address of the subcontractor, identification of the principal contract, description of the work and a few other minor details. Essential's name is printed on page 1 and on page 13, the signature page. Some of the blanks in the agreement have been filled in by typing (such as the number and date of the principal contract) and some by ink insertions (such as the name and address of Gains). All of Paragraph THIRTIETH is printed. Some question as to what is contained in Paragraph THIRTIETH results from the notation in the left-hand margin opposite the Paragraph indicating that it deals with "ARBITRATION". In the course of the argument

on this motion, defendants' counsel termed this marginal notation "a printer's error".

■■ The question before this Court is whether the contractual provisions set forth herein indicate an intention that controversies arising under this particular subcontract may be brought elsewhere than in the New York courts. The proviso clause in the first sentence of Paragraph THIRTIETH was apparently designed by Essential to supply sufficient flexibility that the subcontract form might be used for various types of construction jobs. A reading of the contract papers discloses no express language providing for determination in this Court of any claim arising under this subcontract. As is often the case when a standard form contract is applied to a specific factual situation, the language of Paragraph THIRTIETH is not clear or meaningful in the context of this particular construction job. In the event of ambiguity in the terms of a contract, it should be construed against the party drawing it. Southern Ry. Co. v. Coca Cola Bottling Co., 145 F.2d 304 (4th Cir. 1944); Hughes & Co. v. Pioneer Fireproof Door Corp., 230 Md. 36, 185 A.2d 383 (1962). Ambiguity concerning the terms of this subcontract must accordingly be resolved against Essential.

■ Upon review of all the contract papers, the Court concludes that the restrictions of Paragraph THIRTIETH were not intended to apply to an agreement such as the present one in which the contract papers indicate that a Miller Act bond will be required. Provision for the determination of a Miller Act controversy arising under this subcontract was in fact made "elsewhere in this agreement". Suit on a Miller Act bond may be brought only in the United States District Court for the district where the work is to be performed. Therefore, agreement as to the posting of a Miller Act bond for this contract constituted further agreement that suit by a subcon-

2. 40 U.S.C.A. § 270b(b).

tractor to enforce a claim thereunder might be brought in this Court.

## II

Even if the subcontract could be construed as requiring that any suit thereunder must be brought only in the New York state courts, defendants' motion to dismiss would still have to be denied. Under the circumstances of this case, a contractual provision with the meaning ascribed to it by defendants would be invalid because its enforcement would prevent the plaintiff from pursuing a cause of action conferred by the terms of the Miller Act.

In a majority of jurisdictions, the common law rule is still or formerly was that contractual agreements are invalid which seek to limit particular causes of action which might arise in the future to a court in a specified place. Home Ins. Co. v. Morse, 20 Wall. 445, 22 L.Ed. 365 (1874); Restatement of Contracts, § 558; 6A Corbin, Contracts, § 1445; 56 A.L.R.2d 300, 306 (1957); 45 Yale L.J. 1150 (1936). Judge Parker noted by way of dictum in United Fuel Gas Co. v. Columbian Fuel Corp., 165 F.2d 746, 749 (4th Cir. 1948) that parties cannot by contract oust the federal courts of their statutory jurisdiction.[3]

Defendants relying on the very recent case of Central Contracting Co. v. Maryland Casualty Co., 367 F.2d 341 (3d. Cir. 1966), contend that the more modern rule is that such contracts are invalid only when unreasonable. The *Central Contracting Co.* case did not involve a Miller Act claim. There a painting subcontractor sued a surety under a payment bond furnished in connection with a public housing project of the City of Pittsburgh. Suit was brought in federal court in Pennsylvania, but the general contractor was not joined as a defendant. The plaintiff had earlier brought a separate action against the general contractors on the same claim in a Pennsylvania state court, and such action was pending at the time of. the federal court litigation. Defendant moved to dismiss the federal court suit on the ground that the subcontract contained a provision that any action brought pursuant to it should be limited to the courts of New York County, New York. The District Court held that the contractual stipulation limiting jurisdiction to the courts of New York County was a reasonable one and therefore valid. Central Contracting Co. v. Maryland Casualty Co., 242 F.Supp. 858 (W.D.Pa.1965).

In affirming the judgment of the District Court the Third Circuit Court of Appeals relied upon a decision of the Supreme Court of Pennsylvania in an action that the same subcontractor had brought against the general contractors. Central Contracting Company v. C. E. Youngdahl & Co., Inc., 418 Pa. 122, 133, 209 A.2d 810, 816 (1965). The Third Circuit Court of Appeals quoted extensively from that decision at page 344 of 367 F.2d of its opinion:

"The modern and correct rule is that, while private parties may not by contract prevent a court from asserting its jurisdiction or change the rules of venue, nevertheless, a court in which venue is proper and which has jurisdiction should decline to proceed with the cause when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation. * * * Such an agreement is unreasonable only where its enforcement would, under all circumstances existing at the time of litigation, seriously impair plaintiff's ability to pursue his cause of action.

---

3. In a footnote the Court cited the following authorities in support of this statement:
Ins. Co. v. Morse, 20 Wall. 445, 458, 22 L.Ed. 365; Guaranty Trust & Safe Deposit Co. v. Green Cove Springs & Melrose Railroad Co., 139 U.S. 137, 143, 11 S.Ct. 512, 35 L.Ed. 116; United States v. Leahy, 3 Cir., 148 F.2d 462, 467; Nashua River Paper Co. v. Hammermill Paper Co., 223 Mass. 8, 111 N.E. 678, L.R.A.1916D, 691; 14 Am.Jur. 389.

Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things. If the agreed upon forum is available to plaintiff and said forum can do substantial justice to the cause of action then plaintiff should be bound by his agreement."

The Third Circuit Court of Appeals said that it was unnecessary to consider whether in that diversity case it was bound to apply the Pennsylvania rule inasmuch as it found that both federal and state courts have increasingly in recent years recognized the same principle which the Supreme Court of Pennsylvania has now adopted.[4]

Defendants argue that in terms of its reasonableness, Paragraph THIRTIETH requiring that suit be brought in New York is not invalid because Essential is a New York corporation and its witnesses reside in and about New York City. However, in the *Central Contracting Co.* case, the court stated that in addition to the test of reasonableness it must also appear that suit in the jurisdiction specified by the contract would permit substantial justice to plaintiff's cause of action, if the contractual provision is to be upheld.

In *Central Contracting Co.*, no Miller Act bond was involved, and the subcontractor's suit in New York would be based on the same common law rights as the suit brought in the Pennsylvania federal court. In the present case, the facts are quite different. The use plaintiff has brought this action under the Miller Act, a federal statute granting substantial rights to subcontractors and materialmen furnishing labor or materials for government projects. If the use plaintiff in this case is required to sue in the New York state courts, its cause of action will be based on the common law. It will not in New York be entitled to the rights granted to it by the Miller Act, including the right to join the surety as a party defendant.

■ An affidavit of Gains suggests that Essential might be without sufficient funds to satisfy any judgment secured against it. An affidavit of defendants asserts that Essential has the financial ability to meet any such judgment entered. This Court cannot determine this factual question on the basis of conflicting affidavits, nor is it necessary to do so. The mere raising of this factual issue illustrates one of the Miller Act benefits which would not be enjoyed by the use plaintiff if suit must be brought in a New York state court.

■ Accordingly, the Court finds that enforcement of Paragraph THIRTIETH as construed by defendants would seriously impair the use plaintiff's ability to pursue its cause of action. Since the use plaintiff would not be entitled to its Miller Act rights in the New York state courts, such forum cannot do substantial justice to its cause of action. As construed by defendants, Paragraph THIRTIETH would, therefore, be invalid in requiring that the use plaintiff in this case can sue only in the New York state courts.[5]

---

4. Citing among other decisions the following:
Wm. H. Muller & Co., Inc. v. Swedish American Line Ltd. & T.S.S. Co., Ltd., 224 F.2d 806, 56 A.L.R.2d 295 (2 Cir. 1955); Takemura & Co., Ltd. v. The S. S. Tsuneshima Maru, 197 F.Supp. 909 (S.D. N.Y.1961); Euzzino v. The London & Edinburgh Ins. Co., Ltd., 228 F.Supp. 431 (N.D.Ill.1964); General Electric Co. v. City of Tacoma, 250 F.Supp. 125 (W.D. Wash.1966); Calzavara v. Biehl & Co., Inc., 181 So.2d 809 (La.Ct.App.1966).

5. National Equipment Rental Ltd. v. Szukhent, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed. 2d 354 (1964), relied upon by defendants, is not in point. The Supreme Court there upheld as proper under Federal Rule 4(d) (1) service upon a New York resident appointed for such purpose by Michigan lessees pursuant to a provision in a printed form equipment lease with a New York lessor. That case dealt with an agreement authorizing the bringing of an action in a specified state which might otherwise have lacked jurisdiction.

Finally, defendants argue that by virtue of Paragraph THIRTIETH of the subcontract, the use plaintiff has waived its rights to proceed in this Court under the Miller Act.

No case has been called to the Court's attention holding that a federal court will enforce a clause in a contract expressly denying a subcontractor rights conferred by Congress when it enacted the Miller Act.[6] There are several cases which hold that an agreement between a contractor and subcontractor to arbitrate a dispute will be upheld even though Miller Act jurisdiction exists and that a suit brought in federal court under the Act may be stayed pending such arbitration. United States for Use and Benefit of Air-Con, Inc. v. Al-Con Development Corporation, 271 F.2d 904 (4th Cir. 1959); Agostini Bros. Bldg. Corp. v. United States on Behalf of and for Use of Virginia-Carolina Electrical Works, 142 F.2d 854 (4th Cir. 1944); United States for the Use and Benefit of Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc., 364 F.2d 705 (2d Cir. 1966). These cases go no further than to say that the Miller Act does not prohibit arbitration *before* resort to the courts if the subcontractor and contractor had previously agreed to arbitrate disputes.

It is not necessary to decide in this case whether rights under the Miller Act may be waived by a subcontractor by a properly worded contractual provision. For the reasons set forth in this opinion, Paragraph THIRTIETH does not constitute such a waiver on the part of Gains.

Defendants' motion to dismiss, treated herein as a motion for summary judgment, is therefore denied. Counsel will prepare and submit an appropriate order.

The present case deals with an agreement construed by defendants to require that the action be brought in one state to the exclusion of all others.

6. In United States for the Use of Koppers Company, Inc. v. Five Boro Construction Corp., 310 F.2d 701 (4th Cir. 1962), the Court noted that "conceivably" a supplier might waive his rights by not complying with the terms of the Act, including the giving of notice. No contention has been made here that the use plaintiff has not given the proper notice nor complied with the other procedural requirements of the Act.