The **UNITED STATES** of America for the Use and Benefit of **LINCOLN ELECTRIC PRODUCTS CO., Inc.**, Plaintiff-Appellee,

v.

**GREENE ELECTRICAL SERVICE OF LONG ISLAND, INC.**, Defendant,

and

**R. P. McTeague Construction Corp.**, and Fidelity & Deposit Company of Maryland, Defendants-Appellants.

No. 74, Docket 30477.

United States Court of Appeals Second Circuit.

Argued Oct. 21, 1966.

Decided June 21, 1967.

Daniel W. Tractenberg, New York City, for plaintiff-appellee.

Edward Cherney, New York City, Murray Pudalov, Paltrow & Pudalov, Massapequa Park, N.Y., for defendants-appellants.

Before WATERMAN, HAYS and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge:

This is an appeal by the prime contractor and its surety from a judgment of the United States District Court for the Eastern District of New York, awarding the use-plaintiff $10,500 plus interest on a claim under the Miller Act, 40 U.S.C. § 270a–270d. The lower court's opinion is reported at 252 F.Supp. 324 (E.D.N.Y. 1966).

R. P. McTeague Construction Corp. (McTeague) entered into a contract with the United States for the construction of an automotive maintenance shop at Westhampton Air Force Base, Long Island. As required by 40 U.S.C. § 270a McTeague furnished a payment bond issued by Fidelity & Deposit Company of Maryland (Fidelity) for the benefit of persons supplying labor, services, and materials in the performance of the contract. Greene Electrical Service of Long Island, Inc. (Greene) was an electrical subcontractor for McTeague. Lincoln Electric Products, Inc. (Lincoln) is an electrical supplier who furnished certain materials and equipment to Greene to be used by Greene in performing its contract with McTeague.

By a purchase order dated April 29, 1964 Lincoln and Greene contracted with each other for the delivery of this ma-

terial and equipment for an agreed price of $10,500. Deliveries were made during the latter part of 1964 of all the separate items so contracted for. The date of the last delivery was disputed for there was testimony to the effect that all deliveries were completed by late November though the date of the last bill of lading was December 23, 1964. Greene never paid Lincoln for the items delivered under this contract. One check was given to Lincoln by Greene but was dishonored. Lincoln continued deliveries despite the dishonor of the check and the absence of any other payment by Greene, and while making these deliveries did not notify McTeague that it was not receiving any payments from Greene. During this same period while Greene was not paying Lincoln, Greene was receiving its progress payments from the principal contractor McTeague. These payments substantially exceeded the value of the Greene-Lincoln contract and, as it developed, even exceeded the value of the work that Greene, which never completed its contract, performed on the project. Greene, though receiving its money, went out of business before the project was completed without paying Lincoln, and evidence was also in the case that Greene owed Lincoln upon other contracts in addition to the Miller Act one here at issue.

Lincoln mailed McTeague the statutorily required notice of non-payment on March 23, 1965 within ninety days after December 23, 1964. McTeague claimed that it was unaware before receiving this notice that Lincoln had furnished materials to Greene. McTeague had executed an order for materials in which Lincoln's name had appeared, but Lincoln, as we have above stated, made no attempt prior to its delivery of the statutory notice to inform McTeague of Greene's failure to pay it anything on the contract.

This action was commenced by Lincoln against appellants under 40 U.S.C. § 270b, plaintiff joining Greene for breach of contract. The trial court, sitting without a jury, rendered judgment for Lincoln against Greene, McTeague, and Fidelity. McTeague and Fidelity appeal, claiming that several errors were committed by the court below.

Appellants claim the trial court erred in finding as a fact that the last delivery was made on December 23, 1964, which finding made Lincoln's March 23, 1965 notice to McTeague timely under the statute. The finding is supported by the documentary evidence of a dated bill of lading and, as it is also based to some extent on the trial court's estimate of the credibility of the witnesses before it, we cannot say that it was clearly erroneous. Fed.R.Civ.P. 52(a).

Appellants in their brief imply that there might have been collusion between Greene and Lincoln because of the debts which Greene owed Lincoln on transactions apart from those that arose under this contract. Appellants advance this surmise on the thought that if McTeague had been aware that Lincoln was not being paid by its subcontractor Greene, it, as the prime contractor, would have made the payments directly to Lincoln and charged them against the sums due from it to Greene; but by not informing McTeague of Greene's current indebtedness Lincoln might be able to persuade Greene to use the funds received from McTeague to pay its other debts to Lincoln, leaving unpaid the indebtedness incurred on the McTeague project, indebtedness which would be collectible by Lincoln from the appellants on McTeague's payment bond. Nevertheless, the only relevant evidence on this issue was that no payments whatever were made by Greene to Lincoln to apply upon any debts. This negates the possibility of there having been any successful collusion between Lincoln and Greene and, in the absence of any payment on any debt, would seem to destroy appellants' surmise that a collusion had been attempted. While such a collusion, if proved, might be relevant to appellants' claims of estoppel, to be discussed *infra,* we will not consider the claim when no evidence tending to support collusion was offered at the trial and no finding relevant thereto was made by the trial judge.

■ Appellants claim further that Lincoln's failure to inform McTeague earlier of Greene's precarious financial condition, dishonored check, and default of payments estops Lincoln from recovering on the bond. In a proper case estoppel may be raised as a defense under the Miller Act by the prime contractor and its sureties, e. g., United States for the use of Gulfport Piping Co. v. Monaco & Sons, Inc., 336 F.2d 636 (4 Cir. 1964); United States ex rel. Westinghouse Electric v. James Stewart Co., 336 F.2d 777 (9 Cir. 1964); Moyer v. United States for the use of Trane Co., 206 F.2d 57 (4 Cir. 1953). In the *Gulfport Piping* case, supra, it was held that a supplier was estopped from asserting its claim to a Miller Act recovery to the extent that payment had been made to a third party because it knew of and had acquiesced in the false representation of the third party that the third party was the supplier and, as a result thereof, the general contractor had been induced to make direct progress payments to the third party. In the *James Stewart Co.* case, supra, the supplier was estopped from successfully asserting a Miller Act claim because, after specifically agreeing to furnish such information, the supplier failed to inform the prime contractor that the subcontractor was in default in its payments, and the prime contractor, relying upon the supplier's promise, paid its subcontractor. The *Moyer* case, supra, held there to be an estoppel where the materialmen gave the subcontractor false receipts showing they had been paid for materials furnished to the subcontractor for which they had not been paid and later wished to claim payment for these materials under the bond.

[4] Here the situation is substantially different from those in the foregoing cases. Lincoln practiced no deception on McTeague and broke no promises made by it to McTeague. It merely made no effort to give McTeague more information or more of a notice than the minimum notice required by the statute. To hold that Lincoln was estopped under these circumstances from asserting its claim for payment would destroy the effectiveness of the statutory scheme by imposing an additional, judicially-created requirement on claimants. In the limited number of cases where a defense of estoppel has been recognized it has been utilized only to prevent claimants from profiting through their false representations to the prime contractor. If it is desired that something more by way of information should be required from a materialman in addition to the statutory minimum before he can successfully pursue his Miller Act remedy, the defect, if any, in the statute is not one of a type which the courts should repair, see Friendly, The Gap in Lawmaking— Judges Who Can't and Legislators Who Won't, 63 Colum.L.Rev. 787 (1963), to the detriment of one who, guiltless of fraud, misrepresentation, or unconscionable connivance, relying on the statute, has complied with the minimum requirements.

■ Appellants also contend that the statutory language that an unpaid materialman may recover on the prime contractor's bond an amount "justly due" means that he may recover a sum equal to the fair and reasonable value of the materials furnished but not an agreed-upon contract price. To this end, they attempted at trial to introduce evidence tending to prove the fair and reasonable value of the materials furnished. The trial court sustained an objection to the offer and the appellants claim this to be prejudicial trial error. We affirm the lower court's ruling for the amount "justly due" in the absence of any showing of fraud or collusion is determined by the contract price and not the reasonable value of the material. Geis Construction Co. v. United States for the use of Tom Igel Co., 243 F.2d 568 (6 Cir. 1957); see D. & L. Construction Co. v. Triangle Elec. Supply Co., 332 F.2d 1009 (8 Cir. 1964); cf. L & E Co. v. United States for the use of Kaiser Gypsum Co., 351 F.2d 880, 883 (9 Cir. 1965). Appellants attempt to set this present case apart on the ground that Lincoln continued to make deliveries after learning of Greene's

precarious financial condition; but surely the statutory bond should fully protect a supplier who in good faith reliance on it continues to make deliveries to a contractor engaged in work upon a necessary government project. The prompt completion of the project should not be delayed by interpreting the statute, designed to prevent delay, to require that materialmen inquire into the financial condition of those with whom they have contracted to furnish materials.

Affirmed.