**UNITED STATES** of America For the Use and Benefit of I. BURACK, INC., a New York corporation, Plaintiff,

v.

**SOVEREIGN CONSTRUCTION COMPANY, Ltd.,** a New York Corporation, et al., Defendants.

No. 64 Civ. 382.

United States District Court, S. D. New York.

Jan. 31, 1972.

---

David C. Gilberg, Mt. Vernon, N. Y., for plaintiff.

M. Carl Levine, Morgulas & Foreman, by Jerrold Morgulas, New York City, for defendants Sovereign Construction Co., Ltd. and Continental Casualty Co.

CANNELLA, District Judge.

Action brought pursuant to the Miller Act, 40 U.S.C. § 270a et seq., to recover the purchase price of materials furnished by the use plaintiff to defendant Kings Ferry Corporation for the construction of a Cadet library. Judgment shall be entered in favor of the use plaintiff.

On December 28, 1961, defendant Sovereign Construction Company, Ltd. [hereinafter "Sovereign"] entered into a written contract[1] [hereinafter "prime contract"] with the United States of America to furnish all of the labor and materials and to perform all of the work required to construct a Cadet library at the United States Military Academy at West Point, New York [hereinafter "the project"]. On that same day, defendant Sovereign, as principal, and defendant Continental Casualty Company, as surety, furnished a payment bond to the United States of America in the sum of $1,458,987.60 to secure the prompt payment by Sovereign to all persons supplying labor and material in the prosecution of the work provided for in the prime contract.[2] Thereafter, on January 5, 1962, Sovereign entered into a subcontract with defendant Kings Ferry Corporation [hereinafter "Kings Ferry"] wherein the subcontractor agreed, *inter alia*, to complete a portion of the mechanical work required under the prime contract.[3] In order to perform under the subcontract, Kings Ferry ordered various materials between February 13, 1962 and August 29, 1963 from the use plaintiff, I. Burack, Inc. [hereinafter "Burack"]. When the defendants refused to pay for certain of these materials, Burack gave written notice to them, in accordance with 40 U.S.C. § 270b(a),[4] that they owed $7,932.65, with interest. The defendants again refused to pay and this action ensued.[5]

This court has jurisdiction under 40 U.S.C. § 270a et seq.

The defendants contend that Burack should be estopped from making any claim for payment because it violated the terms of a guarantee agreement that it made with Sovereign. The court finds that Sovereign agreed on April 3, 1962 to guarantee payment up to $20,000 for material furnished by Burack to Kings Ferry[6] and that on April 18, 1963 the guarantee was increased to $35,000.[7] However, in both cases Burack refused to signify its assent to the terms contained in the guarantees by failing to sign them as requested by Sovereign.

---

1. The contract is identified as No. DA–30–075–Eng–10073. See Plaintiff's Exhibit 1.

2. See Plaintiff's Exhibit 1.

3. See Plaintiff's Exhibits 2 and 3.

4. This notice was sent by registered mail, postage prepaid, addressed to the defendants on September 23, 1963. Defendants Kings Ferry and Continental Casualty Co. received it on September 24, 1963 and defendant Sovereign received it on September 25, 1963. The court finds that the form of the notice was proper. See Plaintiff's Exhibit 11.

5. The court finds that this action was commenced by the filing of a complaint on February 5, 1964, within one year after the date on which the last of the material was supplied by Burack, and is therefore timely. See 40 U.S.C. § 270b(b). Defendant Kings Ferry has not interposed an answer to this suit.

6. See Defendant's Exhibit B.

7. See Defendant's Exhibit H. These guarantees were requested by Burack through Kings Ferry. See Defendant's Exhibit D.

In addition, Burack specifically disagreed with Sovereign's interpretation of the first guarantee.[8]

■ Under certain factual circumstances, estoppel may be a defense in a Miller Act case. See, e. g., United States for Use and Benefit of Gulfport Piping Co. v. Monaco & Son, Inc., 336 F.2d 636 (4th Cir. 1964). However, the court is persuaded that a request for a guarantee as additional security is not such a circumstance. Cf. United States for Use of Friedrich Refrigerators, Inc. v. Forrester, 441 F.2d 779, 782–783 (5th Cir. 1971); United States for Use and Benefit of Clark-Fontana Paint Co. v. Glassman Construction Co., 397 F.2d 8, 11 (4th Cir. 1968); United States for Use of Koppers Co. v. Five Boro Construction Corp., 310 F.2d 701, 703 (4th Cir. 1962). The defendants further contend that Burack should be estopped because it failed to send a substantial number of invoices to Sovereign on current shipments. The court finds, however, that Burack at no time specifically agreed to furnish this information and was under no duty to do so. Cf. United States ex rel. Westinghouse Electric v. James Stewart Co., 336 F.2d 777 (9th Cir. 1964). The court therefore concludes that under these circumstances Burack is not to be estopped from asserting its claim. See, e. g., United States for Use and Benefit of Lincoln Electric Products Co. v. Greene Electrical Service of Long Island, Inc., 379 F. 2d 207, 210 (2d Cir. 1967).

■ The defendants also argue that Burack has failed to prove that the material for which claim is made was actually delivered to and intended for the project. Kings Ferry normally ordered materials from Burack by telephone and either sent down workers employed on the project to pick them up or used Burack's drivers to deliver them to the jobsite.[9] The court concludes that Burack furnished these materials to Kings Ferry in good faith and under the reasonable belief that they were intended for use in the prosecution of the work on the project and that it therefore need not show actual delivery to and incorporation on the jobsite. See, e. g., United States for Use and Benefit of J. P. Byrne & Co. v. Fire Association, 260 F. 2d 541, 545 (2d Cir. 1958). Moreover, the court finds no merit to the defendants' assertion that the amount claimed does not represent the fair and reasonable value of these materials. Cf. Continental Casualty Co. v. Allsop Lumber Co., 336 F.2d 445, 455 (8th Cir. 1964), cert. denied, 379 U.S. 968, 85 S.Ct. 662, 13 L.Ed.2d 561 (1965); Geis Construction Co. v. United States for Use of Tom Igel Co., 243 F.2d 568 (6th Cir. 1957) (per curiam).

■ The defendants contend that the notice by Burack on September 23, 1963 was untimely. Under the Miller Act, notice must be made within ninety days from the date on which the use plaintiff supplied the last of the material for which claim is made. See 40 U.S.C. § 270b(a). The court finds that on May 10, 1962 Kings Ferry ordered certain materials for the project under Purchase Order # 6204–40–1 for a sum of $3,987.50.[10] The court further finds that deliveries of a portion of this order were made to the project between April 23, 1963 and August 21, 1963, totalling $3,198.25.[11] Proper notice was given

---

8. See Defendant's Exhibit G.

9. See Defendants' Exhibit O, pp. 12–15. See also Plaintiff's Exhibits 7, 8, and 9.

10. This sum was revised upwards to $4,121.25 by entries in pen but the author and time of this revision are unknown. See Defendants' Exhibit O, p. 47; Plaintiff's Exhibit 5. But see Plaintiff's Exhibit 25.

11. The deliveries were as follows:

| Delivery Date | Invoice # | Amount |
|---|---|---|
| 4/23/63 | 38858 | $ 82.05 |
| 5/24/63 | 39429 | 1,376.60 |
| 5/29/63 | 39675 | 625.40 |
| 6/6/63 | 39700 | 452.50 |
| 6/4/63 | 39714 | 328.20 |
| 6/14/63 | 39793 | 106.00 |
| 7/11/63 | 40060 | 48.75 |
| 7/17/63 | 40170 | 178.75 |
| | TOTAL | $3,198.25 |

See Plaintiff's Exhibit 9.

within ninety days of the last delivery on this purchase order and the court therefore concludes that the defendants are obligated to pay $3,198.25, plus interest, for this part of Burack's claim. See, e. g., United States for Use and Benefit of P. A. Borquin & Co. v. Chester Construction Co., 104 F.2d 648 (2d Cir. 1939); United States for Use and Benefit of General Electric Supply Corporation v. Harry Hershon Co., 52 F.Supp. 832 (S.D.N.Y.1943); cf. United States for Use and Benefit of Lincoln Electric Products Co. v. Greene Electric Service of Long Island, Inc., 379 F.2d 207 (2d Cir. 1967).

■ Kings Ferry apparently ordered the remainder of the materials for this project under a series of purchase orders. The Second Circuit has held that if a gap of more than ninety days exists between deliveries under a series of purchase orders, a later shipment cannot revive the Miller Act liability for the previous shipments. See United States for Use and Benefit of J. A. Edwards & Co. v. Peter Reiss Construction Co., 273 F. 2d 880 (2d Cir. 1959), cert. denied, 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed.2d 869 (1960). See also United States for Use of General Electric Co. v. H. I. Lewis Construction Co., 375 F.2d 194, 201–202 (2d Cir. 1967). In this case, a number of the shipments for which Burack claims payment were delivered prior to December 28, 1962. The next series of deliveries under this claim commences April 1, 1963.[12] The court finds that a gap of more than ninety days exists between the two series of deliveries and that any claim for payment on deliveries made prior to April 1, 1963 is therefore barred.

■ In addition, the court is persuaded that under a series of purchase orders a claim for material not delivered within ninety days of the date of notice of claim even if no gap of ninety days exists between successive deliveries, is similarly barred by the notice proviso. The Miller Act generally is designed to protect the supplier against defaults in payment for material delivered to a governmental project. However, the notice proviso in the Act is for the benefit of the prime contractor, not the supplier. See United States for Use of General Electric Co. v. H. I. Lewis Construction Co., 375 F.2d at 201. After notice is given by a supplier, a contractor ordinarily is able to protect himself by withholding appropriate sums from his payments to the subcontractor. However, once ninety days have elapsed without such notice, the contractor ought to be free to pay the subcontractor for his work without risk of liability to the supplier. A less strict interpretation of the notice proviso "would lead either to double payments or to interminable delay in settlements between contractors and subcontractors to guard against these,—in either case with attendant prejudice to all concerned." United States for Use and Benefit of J. A. Edwards & Co. v. Thompson Construction Corp., 273 F.2d 873, 875–876 (2d Cir. 1959), cert. denied, 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed. 2d 869 (1960). In order to protect against this occurrence, the court concludes that the notice proviso of 40 U.S. C. § 270b bars claims on individual purchase orders for material delivered more than ninety days from the date of the notice.

■ Nevertheless, the court finds that between June 23, 1963 and August 29, 1963 Burack delivered material for use on the project in the amount of $2,567.88 in addition to the material furnished pursuant to Purchase order # 6204–40–1 in the amount of $3,-198.25; that proper notice was given within ninety days of the delivery of the material; that $39.83 of this claim are

---

12. The court finds that the item appearing under the date of March 26, 1963 on Burack's project account is a charge for a delivery made at some undetermined time prior thereto. See Plaintiff's Exhibits 10 and 26.

tools,[13] which may not be claimed under the Miller Act; and that the defendants are therefore obligated to pay $5,726.30 plus interest on the entire claim.[14]

The parties are directed to settle an order within ten days in conformity with this opinion which represents the court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

So ordered.

---

13. The tools for which claim was improperly made are as follows:

| Delivery Date | Invoice # | Type | Amount |
|---|---|---|---|
| 7/19/63 | 11159 | wrenches | $12.24 |
| 8/13/63 | 11416 | wrench | 5.00 |
| | | pipe cutter with pin | 13.81 |
| 8/13/63 | 4801 | pipe cutter | 8.78 |
| | | | $39.83 |

See Plaintiff's Exhibit 9.

---

14. The court finds no agreement between the parties that Sovereign's payments to Burack were to be credited to current invoices, thereby extinguishing Burack's claim in toto. Burack therefore properly applied Sovereign's checks to the earliest matured debt. See Restatement of Contracts § 394; 5A Corbin on Contracts § 1231.