**UNITED STATES of America for the Use of A & M PETROLEUM, INC., a Mississippi Corporation, Plaintiff,**

v.

**SANTA FE ENGINEERS, INC., Gulf/American Constructors, Inc., Industrial Indemnity Company, and United States Fire Insurance Company, Defendants.**

**Civ. A. No. S86–0133(NG).**

United States District Court, S.D. Mississippi, S.D.

Feb. 26, 1987.

---

G.E. Estes, Jr., Gulfport, Miss., for plaintiff.

Martin R. Salzman and Charles D. Mays, Atlanta, Ga., Robert C. Galloway, Gulfport, Miss., William M. Coats, Houston, Tex., and Alben N. Hopkins, Gulfport, Miss., for defendants.

## MEMORANDUM OPINION

GEX, District Judge.

This is an action brought under the Miller Act, 40 U.S.C. Section 270a–270d to recover the cost of materials furnished by the use-Plaintiff, A & M Petroleum, Inc., (A & M) to or for Gulf/American Constructors, Inc., (Gulf/American) a subcontractor on a public works contract.

Defendant Santa Fe Engineers, Inc., (Santa Fe) was the general contractor to the United States of America under a contract denominated No. V101C–1263, Project No. S20–E56 that provided for renovation and modernization of various buildings at the Veterans Administration Hospital in Gulfport, Mississippi. Defendants Industrial Indemnity Company and United States Fire Insurance Company executed performance and payment surety bonds in favor of the United States of America in connection with the above referenced contract. On or about February 2, 1984, Santa Fe subcontracted the performance of a part of the work on the Gulfport Veterans Administration Hospital to Defendant Gulf/American, as reflected in subcontract agreement No. 476–1. In November of 1984, Gulf/American began to purchase petroleum products, specifically diesel fuel and related supplies such as pumps, filters and grease from use-plaintiff A & M, which were needed to fulfill Gulf/American's contractual responsibilities on the Gulfport VA project. All of A & M deliveries were made pursuant to separate and distinct purchase orders

placed by Gulf/American during the course of the profect as reflected below:

| Date | Invoice No. | Amount |
|---|---|---|
| 11/15/84 | 8927 | $ 91.58 |
| 3/6/85 | 344491 | 466.36 |
| 4/9/85 | 1011 | 114.60 |
| 4/15/85 | 1096 | 124.56 |
| 4/16/85 | 344315 | 108.40 |
| 4/18/85 | 1191 | 131.19 |
| 4/22/85 | 344295 | 6.60 |
| 4/22/85 | 1230 | 124.46 |
| 4/22/85 | 1219 | 30.30 |
| 4/23/85 | 1262 | 39.60 |
| 4/24/85 | 1274 | 105.46 |
| 4/24/85 | 1269 | 19.30 |
| 4/26/85 | 1331 | 21,120.00 |
| 4/27/85 | 344213 | 50.16 |
| 6/5/85 | 1900 | 38.60 |

Gulf/American paid $932.72 on its A & M account on July 23, 1985. Further payments were not forthcoming; A & M first gave notice to Santa Fe on August 8, 1985, that Gulf/American had not paid use-plaintiff's invoices for materials delivered to the project site.

It is undisputed that the petroleum products delivered by use-plaintiff to Gulf/American were furnished and substantially consumed in prosecution of the work provided for in Santa Fe's main contract with the United States of America thus subjecting the general contractor and its surety to liability for any unpaid claim for the cost of the materials. It is further uncontested that each delivery made by use-plaintiff to the project site was a separate, distinct and independent contract wholly unrelated to any prior or subsequent delivery. The parties have, however, filed cross-motions for summary judgment on the question of the timeliness of use-plaintiff's notice to Santa Fe of its claim. A & M's position is that, since it last furnished materials to Gulf/American at the project site on June 5, 1985, any notice received by Santa Fe within ninety (90) days after that delivery is sufficient under 40 U.S.C. Section 270b(a) to impose liability upon Santa Fe for the cost of all materials supplied by use-plaintiff on or before that date. Santa Fe counters that, as each delivery was a separate and distinct contract wholly unrelated to any prior or subse-quent delivery, 40 U.S.C. Section 270b(a) requires that the general contractor receive notice within ninety (90) days after each delivery before liability may be imposed.

40 U.S.C. Section 270b(a) provides in pertinent part:

[A]ny person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person ... supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied ....

40 U.S.C. Section 270b(a) (1976).

The application of the notice provision of Section 270b(a) to a claim for goods furnished to a subcontractor on an open account basis was first discussed in *Noland Co. v. Allied Contractors, Inc.*, 273 F.2d 917 (4th Cir.1959). Noland had furnished supplies on an as needed basis to one of Allied's subcontractors. Noland's relationship with the subcontractor commenced on December 13, 1954, and ended on April 6, 1955. Twelve sales transactions occurred over that time frame. Noland was not paid by the subcontractor; notice of Noland's claim was forwarded to Allied on May 5, 1955. Allied contended that, since some of the deliveries of materials were made more than ninety days prior to the May 5th notice, it was liable only for the cost of those goods supplied within the ninety day period preceding the notice. The district court concluded that Allied's interpretation of the notice provision was correct and afforded Noland relief with respect to only those deliveries made within ninety (90) days of May 5, 1955. On appeal, the Fourth Circuit reversed stating:

[T]he Miller Act lends itself to the construction that if all the goods in a series of deliveries by the materialman to a subcontractor are used on the same government project, the notice is in time

as to all of the deliveries if it is given within ninety days from the last delivery.

*Id.* at 920.

The Court balanced the equities between the materialman/use-plaintiff and the general contractor and determined that one of the central purposes of the Miller Act, the protection of laborers and suppliers on a government contract, compelled the conclusion that the use-plaintiff be allowed to recover the cost of all goods supplied to a subcontractor pursuant to a series of orders regardless of the time of delivery as long as notice was given to the general contractor within ninety days after the date of the delivery of the last supplies ordered.

At the same time the Fourth Circuit was deciding *Noland,* the Second Circuit addressed the issue before the Court today in *United States v. Peter Reiss Construction Co.,* 273 F.2d 880 (2nd Cir.1959), *cert. denied* 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed.2d 869 (1960). Use-plaintiff J.A. Edward & Company had furnished various electrical supplies to one of Reiss' subcontractors pursuant to individual purchase orders. Deliveries were made in August, 1956, September, 1956, October, 1956, and March, 1957. The costs of supplies delivered through October, 1956, was $10,750.37; one delivery occurred in March, 1957, that was valued at $15.90. On April 5, 1957, Edwards & Co. served notice on Reiss asserting a claim for $6,274.44 which was the balance remaining on Edwards & Company's open account with the subcontractor after having received a March 1, 1957, payment of $4,491.33. Edwards & Company argued that since the April 5, 1957, notice was served within ninety days of the March, 1957 delivery, the notice should relate back to all the previous deliveries thus entitling Edwards & Company to recover the full amount of the debt from the general contractor. In rejecting use-plaintiff's contention Judge Friendly wrote for the court:

[A]ny rights of Edwards to make claim against Reiss and the surety with respect to the deliveries of August, September and October, 1956, ended on January 29, 1957. From that day forward Reiss could have made payments to Greene free from any liability to Edwards under the Miller Act with respect to all these deliveries ... [I]t would be wholly inconsistent with the purpose of the notice provision of the Miller Act ... to hold that a shipment made on March 5, 1957 ... could revive a Miller Act liability long extinguished and thereby place in jeopardy payments properly made by the contractor to the subcontractor in the interval.

*Id.* at 881–82. The Second Circuit balanced the equities between the materialman/use-plaintiff and the general contractor and determined that one of the central purposes of the Miller Act, the protection of the general contractor from claims of laborers or suppliers who sit on their rights for an unreasonable period of time, compelled the conclusion that, where a materialman allows a ninety day time period to lapse between any consecutive deliveries in a chain of separate purchase order contracts without notifying the general contractor that a subcontractor is not paying his bills, the general contractor should be protected from such a laggard claimant.

The tension between the interest of a Miller Act laborer/supplier and the interest of a Miller Act general contractor was next addressed in *United States v. Sovereign Construction Co., Ltd.,* 338 F.Supp. 657 (S.D.N.Y.1972). I. Burack, Inc., use-plaintiff, had furnished materials to one of Sovereign's subcontractors in connection with a public works contract for which Sovereign was the prime contractor. The use-plaintiff supplied a substantial portion of those materials on an open account basis from February 13, 1962, through August 29, 1963. The subcontractor refused to pay use-plaintiff and consequently, notice was forwarded to Sovereign on September 23, 1963, of Burack's outstanding claim. Sovereign contended that use-plaintiff's September 23, 1963, notice was untimely. In resolving the use-plaintiff's claim the court acknowledged the *Reiss* opinion and went on to state:

[T]he court is persuaded that under a series of purchase orders a claim for material not delivered within ninety days

of the date of notice of claim even if no gap of ninety days exists between successive deliveries, is similarly barred by the notice proviso. The Miller Act generally is designed to protect the supplier against defaults in payment for material delivered to a governmental project. However, the notice proviso in the Act is for the benefit of the prime contractor, not the supplier. After notice is given by a supplier, a contractor ordinarily is able to protect himself by withholding appropriate sums from his payments to the subcontractor. However, once ninety days have elapsed without such notice, the contractor ought to be free to pay the subcontractor for his work without risk of liability to the supplier. A less strict interpretation of the notice proviso "would lead either to double payments or to interminable delay in settlements between contractors and subcontractors to guard against these,—in either case with attendant prejudice to all concerned." In order to protect against this occurrence, the court concludes that the notice proviso of 40 U.S.C. Section 270b bars claims on individual purchase orders for material delivered more than ninety days from the date of the notice.

*Id.* at 661 (citations omitted). Clearly the *Sovereign* court felt that as between the general contractor and the material-man/use-plaintiff, the notice provision of Section 270b(a) was enacted to protect the general contractor from dilatory claims by materialmen who are in a superior position to the general contractor with respect to protecting their Miller Act rights.

In the instant case the Court finds that, in balancing the interest of a Miller Act general contractor with the interest of a Miller Act laborer/supplier against the backdrop of the economic and business realities of the day, the only logical conclusion is that the notice provision of 40 U.S.C. Section 270b(a) bars claims on individual purchase contracts where the supplier fails to notify the general contractor that a subcontractor is not making payments on an open account within ninety days of each delivery. To expect a Miller Act supplier to send out statements on open accounts on a consistent basis, be it weekly, monthly, or quarterly, is to do no more than hold the supplier to comport with generally accepted business practices of today. The Court cannot fathom a business enterprise of any nature that does not send out a periodic statement of account to its customers. The general contractor should expect that any supplier who provides labor or material to a subcontractor covered under the Miller Act on an open account or credit basis bills the subcontractor on a regular basis. Once the supplier sees that the subcontractor cannot or will not keep his account current, a demand letter or notice to the general contractor should be issued. A pattern of non-payment for thirty consecutive days should indicate the subcontractor's inability to maintain his accounts. This practice is so commonplace that an example readily comes to mind to illustrate the point. As a holder of a credit card, one expects a monthly statement of account which is due and payable upon receipt. The general business practice is that, if payment is not received within thirty days of the date due a demand letter is issued. Rare is the case where a credit card issuer permits a customer to continue to use a line of credit where it has been established over a two to three month period that the customer will not pay his bills. The Miller Act was not intended to serve as a license for suppliers to act in a manner contrary to contemporary business practices and to their own detriment. The supplier must assume the responsibility for notifying the general contractor of problems with its various subcontractors and sub-subcontractors. Notifying the general contractor of any unpaid balance on an open account on a monthly basis permits the general contractor to protect the supplier's interest under the Miller Act as pointed out in *Sovereign.* It would be inequitable to construe Section 270b(a) to condone injudicious and indolent business practices on the part of suppliers who undertake to deal with Miller Act subcontractors on an open account basis.

As a further observation, the Court notes that a supplier of materials or labor on an open account basis has no way of knowing when a subcontractor will last place an order with the supplier. The Miller Act speaks of ninety days "after the day on

which the last of the labor was done ... or material was furnished." The conclusion seem inescapable that where services are supplied on an open account/as needed basis, the only way for a supplier to protect his right to payment under the Miller Act would be to submit notice to the general contractor every thirty days or at least on a regular ninety day interval. Otherwise, the supplier plays fast and loose with his rights hoping either to be able to guess when his services or goods are being used for the *last* time or praying that once he realizes the subcontractor will not pay his bills, some further order will be placed at a late day as was the case in *Reiss* to revive some, if not all, of the larger past due claim.

The Court thus holds that A & M's August 8, 1985 notice to Santa Fe was untimely with respect to any delivery that occurred more than ninety days preceding that date. As such, use-plaintiff is entitled to recover only the costs of goods supplied to Gulf/American after May 10, 1985. A review of A & M's invoices reflects only one delivery after May 10, 1985—Invoice No. 1900 dated June 5, 1985, in the amount of $38.60.

Santa Fe should present an Order in conformity with this Court's Memorandum Opinion within ten (10) days from the date hereof.